IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012

GLENN GREENWALD
Gávea
Rio de Janeiro
Brazil

JEREMY SCAHILL
33 Irving Place
New York, NY 10003

*THE NATION* COMPANY LP
33 Irving Place
New York, NY 10003

AMY GOODMAN
207 W. 25th St., 11th Fl.
New York, NY 10001

*DEMOCRACY NOW!* PRODUCTIONS, INC.
207 W. 25th St., 11th Fl.
New York, NY 10001

CHASE MADAR
462A 8th St.
Brooklyn, NY 11215

KEVIN GOSZTOLA
869 W. Buena Ave., Apt 219
Chicago, IL 60613

JULIAN ASSANGE
Embajada del Ecuador en Londres
3 Hans Crescent, Knightsbridge
London, UK

and

Civil Action No. _____

WIKILEAKS ITC INC.
University of Melbourne
P.O. Box 4080
Victoria 3052 Australia

                        Plaintiffs,

            v.

COL. DENISE LIND
Chief Judge, 1st Judicial Circuit
U.S. Army Military District of Washington
Office of the Staff Judge Advocate
103 Third Ave. S.W., Suite 100
Ft. McNair, DC 20319

MAJ. GEN. MICHAEL S. LINNINGTON
U.S. Army Military District of Washington
Office of the Staff Judge Advocate
103 Third Ave. S.W., Suite 100
Ft. McNair, DC 20319

LT. GEN. DANA K. CHIPMAN
U.S. Army Judge Advocate General
2200 Army Pentagon
Washington, DC 20310-2200

and

CHARLES T. HAGEL
Secretary of Defense
1000 Defense Pentagon
Washington, DC 20301-1000

                        Defendants.

## **COMPLAINT**

## INTRODUCTION

1.      This is an action for preliminary and permanent injunctive relief under the First

Amendment or in the alternative for a writ of mandamus pursuant to 28 U.S.C. § 1361.  By this

action, plaintiffs seek public access to documents filed or generated in the ongoing court-martial proceedings against Private First Class Bradley Manning, but which the court-martial has refused to publish or otherwise release to the press and public. The documents plaintiffs seek include briefs and other papers filed by the prosecution and defense, court orders, and transcripts of the proceedings (or, if no transcripts exist, equivalent records such as audio tapes). Plaintiffs also seek effective public access to proceedings taking place in off-the-record conferences that, without any articulated justification, have been held outside of public view.

2.       Plaintiffs initially sought relief through the military courts, through and including the Court of Appeals for the Armed Forces, which determined in a recent 3 to 2 decision that the military appellate courts lacked jurisdiction over such claims. As the CAAF dissenters suggested, plaintiffs now have no option other than to file an action in an Article III Court. The court-martial proceedings against PFC Manning are taking place at Fort George G. Meade, a United States Army installation located in Anne Arundel County, Maryland, within this judicial district, and the trial of PFC Manning is expected to commence on June 3, 2013.

## PARTIES

**Plaintiffs**

3.       The Center for Constitutional Rights ("CCR") is a nonprofit public interest law firm also engaged in public education, outreach and advocacy.  CCR has reported extensively through its website and other publications on the issues involved in the Manning court-martial trial. CCR is a corporation organized under the laws of New Jersey, with its principal place of business located at 666 Broadway, New York City.

4.       Glenn Greenwald is a lawyer and prolific columnist and author on national security, civil liberties and First Amendment issues for *The Guardian* and other national media outlets, and has written about the *Manning* proceedings. He resides in Gávea, Rio de Janeiro, Brazil.

5.      Jeremy Scahill is the National Security Correspondent for *The Nation*, the oldest continuously published weekly magazine in the United States. He resides in Brooklyn, New York. He has reported extensively on the Manning case; before Manning's arrest, Manning was a source for a story Scahill wrote regarding Blackwater founder Erik Prince.

6.      The Nation Company LP is a New York Limited Partnership that publishes *The Nation* magazine, with principal offices at 33 Irving Place, New York, NY 10003.

7.      Amy Goodman is the host of *Democracy Now!*, an independent foundation and listener-supported news program broadcast daily on over 950 radio and television outlets and the Internet.

8.      Democracy Now! Productions Inc. is a New York 501(c)(3) corporation that produces *Democracy Now!*, with offices at 207 W. 25th St., Fl.11, New York, NY 10001.

9.      Chase Madar is an attorney, a contributing editor to *The American Conservative* magazine, and the author of *The Passion of Bradley Manning: The Story of the Suspect behind the Largest Security Breach in U.S. History*. He resides in Brooklyn, NY. He will cover the Manning trial for *The Nation*.

10.     Kevin Gosztola is a writer for Firedoglake, a website engaged in news coverage with a specific emphasis on criminal trial issues, and resides in Chicago, IL. He has reported extensively on the Manning proceedings, frequently attending the pretrial proceedings at Ft. Meade.

11.     Julian Assange is publisher of the WikiLeaks media organization. He currently resides in the Embassy of the Government of Ecuador in London, England.

12.     WikiLeaks ITC Inc. is a not-for-profit media organization. Its goal is to bring important news and information to the public. Its registered address is University of Melbourne P.O. Box 4080, Victoria 3052 Australia.

**Defendants**

13.     Chief Judge Col. Denise Lind is the military judge who has been designated by the Army to preside over the pretrial proceedings and trial for Private First Class (PFC) Bradley Manning. She is named in this action in her official capacity only.

14.     Maj. Gen. Michael S. Linnington is Commanding Officer of the Military District of Washington, headquartered in Ft. Lesley J. McNair, Washington, DC, and is the convening authority for the court-martial before which PFC Manning is facing trial, with responsibility for appointing the judge and members of the panel. He is named in this action in his official capacity only.

15.     Lt. General Dana Chipman is the Army Judge Advocate General, the senior uniformed attorney in the United States Army and commanding officer of the Judge Advocate General Corps of the United States Army. In that capacity he is the principal legal advisor to the Army Chief of Staff and Secretary of the Army on matters of military justice and is responsible for interpreting laws applying to the Department of the Army, formulating policies and procedures in regard to review of courts-martial, and managing the administration of military justice in the Army. He is named in this action in his official capacity only.

16.     Charles T. Hagel is Secretary of Defense, the chief executive officer of the Department of Defense, the agency of the United States government charged with coordinating and supervising all functions of the government concerned with the armed forces of the United States.  He is named in this action in his official capacity only.

17.     Individual defendants Lind, Linnington and Chipman are all officers in the United States Army and military employees of the Department of Defense.

## JURISDICTION AND VENUE

18.     This court has jurisdiction under 28 U.S.C. § 1331 and under the mandamus provisions of 28 U.S.C. § 1361. Declaratory relief is available pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201.

19.     This Court is a proper venue for this action pursuant to 28 U.S.C. § 1391(e) because defendants are officers and employees of the United States or its agencies operating under color of law, and a substantial part of the events or omissions giving rise to the claim have occurred and are occurring in this judicial district.

## STATEMENT OF FACTS

20.     On November 28, 2010, the WikiLeaks media organization and its publisher Julian Assange commenced reporting on thousands of allegedly classified and unclassified U.S. State Department diplomatic cables. The cables were subsequently published by other national and international media organizations, including *The New York Times*, *The Guardian*, *Der Spiegel*, *Le Monde*, and *El Pais*. PFC Bradley Manning was arrested in May 2010 in Iraq on suspicion that he provided the diplomatic cables (and possibly other allegedly classified information) to Mr. Assange and/or WikiLeaks. An Article 32 investigation (the military justice equivalent of a probable cause hearing) was conducted at Fort Meade, Maryland, in December 2011, largely outside the public view, and all charges were referred to a general court-martial in February 2012.

21.     PFC Manning now faces a court-martial for offenses including aiding the enemy in violation of Article 104 of the Uniform Code of Military Justice. On February 28, 2013,

Manning entered a plea of guilty to ten counts, but opted to have the remaining twelve counts (including the aiding the enemy charge) tried in a bench trial.

22.     There is disturbing evidence that the Army and other agencies of the government subjected Manning, during his incarceration, to conditions of confinement and treatment reminiscent of the worst abuses of detainees at Guantánamo Bay, including prolonged isolation, sensory deprivation, forced nudity, and other torture or cruel, inhuman and degrading practices. It is therefore not surprising that Manning's court-martial has generated a firestorm of worldwide media attention, most of which has not abated.

23.     Notwithstanding this extraordinary level of public interest, however, the press and public have been largely denied access to even non-classified documents filed in Manning's court-martial. (This denial of access has been documented in briefs and supporting declarations filed by the plaintiffs in prior proceedings in the military courts seeking greater rights of access for the press and public to the records of the *Manning* court-martial.)  For example, the government's motion papers have not been disclosed in any form. A limited number of defense briefs have been made available on the website of defense counsel, apparently by agreement of the parties, but only in heavily redacted form. Thus, at present, the public's continued access to even this subset of redacted defense filings is subject to the willingness of defense counsel to have them made public.

24.     Even the trial court's own orders have not been published by the court. Instead, Judge Lind's usual practice has been to read aloud her orders into the record in open court, often at breakneck speeds approaching 180 words per minute. None of these orders, despite being disclosed in full in open court, have thereafter been published by the court so that the public and press may analyze the court's rulings and reasoning.

25.     In fact, the defendants have not published transcripts or otherwise made available to the press and the general public the records of these or any other open-court proceedings. Nor have any audio files of the proceedings taking place in open court been released to the public.

26.     Although the public to date has been permitted to attend most portions of Manning's pretrial court-martial proceedings (notably excluding the numerous off-the-record conferences that have taken place), public access to court documents has been inexplicably denied.  Thus, the press and public are unable to engage in careful observation and analysis of the issues arising during what is arguably one of the most controversial, high-profile court-martials since the trial of Lt. William Calley for the My Lai Massacre in Vietnam, and the most important case of any kind involving the alleged disclosure of classified information since a military analyst, Professor Daniel Ellsberg, released the Pentagon Papers to the *New York Times* and *Washington Post*.

27.     Indeed, the restrictions on access to these basic documents in the *Manning* case have made it exceedingly difficult for credentialed reporters, including several of the named plaintiffs, to cover the proceedings consistent with their journalistic standards and professional obligations.

28.     On information and belief, and to the best of plaintiffs' knowledge, neither Judge Lind, nor any other government official, ever has indicated in the military court proceedings that the denial of access to these judicial documents and records is necessitated by a need to preserve secrets or classified information, to maintain the integrity of the jury pool, or to promote any other legitimate governmental interest. (Indeed, PFC Manning has recently waived his right to a jury trial, mooting any concern that might exist for contamination of the potential jury pool.) Nor has the prosecution or any other agency of the government moved to seal parts of the judicial record in the *Manning* proceedings, such that members of the press and public would have an opportunity to object. Nor, from the record that is available, has there been any

indication that defendant Lind has made some document-specific finding of justification for restricting all or partial access to the documents described above, after careful consideration of less-restrictive alternatives.  Finally, neither defendant Lind nor any other military authority has indicated that the military courts will eventually allow for greater publication of these documents, and is merely temporarily withholding publication to allow for more careful  review to ensure that no sensitive information that inadvertently slipped into the public record in open court is subsequently republished by the court.

29.     For all practical purposes, Judge Lind has effectuated a blanket closure order over the proceedings in the *Manning* case. Those few members of the public who are able to visit the courtroom are given access to the open court proceedings, and certain redacted defense filings have been made available on defense counsel's internet site. But as to the rest of the documents at issue here, a blanket bar on public access has been the rule.

30.     As noted in more detail below, several important substantive issues have also been addressed and resolved, outside of public view, in off-the-record conferences during the *Manning* pretrial proceedings, including entry of a case management order, a pretrial publicity order and a protective order for the handling of classified information.  The defense eventually moved to have all such off-the-record conferences recorded and transcribed, but that defense motion was denied.

31.     This cloak of secrecy has been drawn over the *Manning* proceedings despite written requests made by several of the named plaintiffs (made on their own behalf and on behalf of the public) and by various other media organizations to the trial court seeking greater public access. Judge Lind construed the last of those letters from plaintiff CCR as a motion to intervene for the purpose of seeking to vindicate the right of public access to the *Manning* proceedings, and

denied the motion. CCR sent an attorney to the April 23, 2012 pretrial hearing during which that order was entered, but despite a request included in the letter, CCR's attorney was not given the opportunity to address the court.

32.      Judge Lind's decision indicated that she believes the military appeals courts (including the Court of Appeals for the Armed Forces ("CAAF") and the Army Court of Criminal Appeals ("ACCA") have only recognized a limited common law right of access to judicial documents, rather than a right of access grounded in the First Amendment.  Defendant Lind's views on this topic have been published previously in an article, Lt. Col. Denise R. Lind, *Media Rights of Access to Proceedings, Information, and Participants in Military Criminal Cases*, 163 Mil. L. Rev. 1, 45-53 (2000). Defendant Lind, consistent with her previous writings, has indicated in her ruling denying public access that she believes the FOIA statute provides an adequate alternative mode of access to the documents in question, displacing the common-law right of access.

33.      As further demonstrated below, it is readily apparent, in the context of the *Manning* case and otherwise, that the limited right of access to military court records created by FOIA, subject to lengthy delays and numerous exemptions, is not adequate to assure the public's and the press's rights of access to documents that are relevant to the newsworthy issues being adjudicated in the *Manning* trial and that will enhance full, robust, and timely public debate about those issues.

**Current Status of Public Access to Documents Generated in the Manning Court-Martial Proceedings, by Category**

*Court orders*

34.      To date the defendants have not caused to be published any of the trial court's own orders. However, *after* the oral argument of Plaintiffs' case in the CAAF, on February 27, 2013, the military released 84 opinions of the trial court, apparently in response to a third party FOIA

request. Many of these opinions were not released to the public until a year after they had been issued in the *Manning* proceedings.   Moreover, the released versions of all the significant opinions contain redactions that would not be allowed under any conceivable application of a First Amendment standard. For instance, the name of the trial judge was redacted from all of the released orders even though Judge Lind's identity is obviously a matter of public record and she herself had read many of the orders aloud in open court sessions.   In other opinions, highly exculpatory information favoring the defense was redacted from the FOIA-released versions of the opinions, under the military's apparent interpretation of various FOIA exemptions, even though that information also had been read aloud in open court.

35.    Significantly, a number of Judge Lind's orders were not released in the military's February 27, 2013 FOIA production, including a January 7, 2013 ruling on whether PFC Manning had been "unlawfully punished" by his harsh conditions of pretrial confinement – a matter of exceptional public interest – as well as a February 26, 2013 order that had been read aloud in open court.

36.    Finally, during prior litigation of this issue in the CAAF, that Court ordered the trial court to produce a transcript of Judge Lind's oral ruling on CCR's request for public access to the court-martial proceedings. The transcript produced to the CAAF included that order and also (seemingly inadvertently) included three additional orders described in paragraph 40 below.

***Defense and prosecution filings***

37.    During the course of the *Manning* pretrial proceedings, and apparently by agreement of the parties as ratified by the court-martial, defense counsel have periodically disclosed on a defense website redacted versions of certain motions filed by defense counsel. Thus, at present, the public's continued access to even these defense filings is subject to the willingness of defense

counsel to publish them, and the agreement of the prosecution concerning their unredacted content.

38.     Under the arrangement by which these defense filings are posted to defense counsel's website, the government is allowed to review and redact the filings prior to their posting. This frequently creates significant delays between filing and posting. Moreover, it appears that the prosecution has been insisting that every word quoted from a government filing be redacted from the defense filing in which it is quoted. By contrast, the prosecution in the *Manning* case has not made available to the public a single one of its briefs and other filings --  notwithstanding that the prosecutors frequently appear to be quoting from their briefs while arguing at the podium in open court.

### *Transcripts or equivalent records of open-court proceedings*

39.     It is not clear from the existing record whether the *Manning* court produces a daily transcript of proceedings taking place in open session, or whether it relies solely on audio recordings of the open court proceedings, or whether it sometimes supplements the audio recordings with a transcript. All courtroom proceedings are subject to audio recording. At the end of each session, the defense receives a CD containing the audio files, which, pursuant to defendant Lind's direction, defense counsel is only permitted to use in support of his motions. Occasionally, a court reporter has been present and uses either a dictaphone or stenographic shorthand to record the proceedings as well.  To date, the defendants have not made available to the public any of these various stenographic or audio records of the proceedings.

40.     There are two documents that were not released to the public by the court, but are publicly available, providing transcripts of what was said in open court during portions of the *Manning* pretrial proceedings. The first is a small section of transcript from the trial court's April

24 pretrial hearing, which was produced specifically in response to the order of the CAAF prior to oral argument on Plaintiffs' writ appeal petition. This transcript was not released directly to the public, but is now freely available (including on CCR's website). It contains not only the trial court's order on CCR's request for public access, but also (apparently by accident) the court's previously-unreleased order regarding amicus briefs, its Security Order, and its Interim Protective Order. The second is the 34-page-long *Statement in Support of Providence Inquiry by PFC Bradley Manning*, which was released to the public on the same Army FOIA release website that the court's 84 orders were published on – although the Army's public release took place only after an audio version of PFC Manning reading the lengthy statement in open court was leaked onto the internet by parties unknown.

**Document requests made through FOIA**

41.    A number of third-party FOIA requests for various judicial records from the *Manning* proceedings remain pending. For instance, in April 2011, Josh Gerstein, a reporter with *Politico*, requested copies of a defense demand for a speedy trial and a complaint regarding PFC Manning's conditions of confinement. This request was denied by the Army (both initially and on administrative appeal) based on the invocation of FOIA exemptions allowing for the withholding of information that might interfere with law enforcement proceedings – despite the fact that the documents in question had been filed by the defense after the charges had been filed.

42.    More recently, Plaintiff Kevin Gosztola filed a FOIA request for the very same portion of trial court transcript that the government produced in response to the order of the CAAF. Plaintiff Gosztola has not yet received the document. Moreover, the defendants and the Department of Defense do not seem to have established who they believe to be the custodian of these records for FOIA purposes.  Plaintiff Gosztola filed his FOIA request with the Office of the

Judge Advocate General, who forwarded it to the Convening Authority, who then forwarded it to the OTJAG Criminal Law Division.

43.     The inadequacy of FOIA as a tool for ensuring public access to the documents at issue here is demonstrated in part by the fact that the Army's FOIA office has indicated that it is working through a backlog of 500 trial documents (presumably including the 84 released judicial orders) totaling 30,000 pages.   Moreover, the practice of the Army to produce requested documents only after significant delays, and in heavily redacted form, is not at all consistent with the needs of the press and the public for timely and full production of documents that lend insights into the issues being adjudicated in a major court-martial trial, which has gained worldwide attention.

**Off-the-record conferences held pursuant to R.C.M. 802**

44.     A number of substantive matters, including the very issue of public access to documents, have been argued and decided by defendant Lind in off-the-record conferences conducted out of view of the public, with no articulated justification for the lack of public access. There is, to Plaintiffs' knowledge, no recording, transcript, or other record of any of those arguments and rulings.

45.     These conferences have been held under the putative authorization of Rule 802 of the Rules for Courts-Martial ("R.C.M."). Rule 802 by its terms contemplates the resolution of "routine or administrative matters" in off-the-record conferences, but allows that substantive matters may be resolved therein by "consent of the parties." Manual for Courts-Martial, Discussion, R.C.M. 802. However, all "matters agreed upon at a conference shall be included on the record." R.C.M. 802(b). Despite the provisions of Rule 802, Judge Lind has decided

substantive matters in off-the-record conferences without promptly memorializing the parties' agreements or her decisions on the record.

46. R.C.M. 1103(b)(2)(B) states that for general courts-martial, "the record of trial shall include a verbatim written transcript of all sessions," except for deliberations by the jury or presiding judge on guilt or innocence. The Discussion note to the rule states that this "verbatim transcript" requirement "includes . . . all proceedings including sidebar conferences. . . . [and that while] conferences under R.C.M. 802 need not be recorded, . . . matters agreed upon at such conferences *must* be included on the record." (Emphasis added.) During the June 6, 2012 pretrial ("Article 39") proceedings, PFC Manning's defense counsel raised a number of objections to the court's R.C.M. 802 practice: (1) the prosecution, it claimed, was relitigating already-decided motions during Rule 802 conferences; (2) the public summary of issues decided in 802 conferences was generally not adequate; and (3) most importantly, the prosecution had been taking positions in 802 conferences and then later taking contradictory positions in open court.

47. That latter problem, the defense contended, should be addressed by granting its motion that all 802 conferences in the case be recorded and transcribed. Judge Lind denied the motion, noting that defense counsel had not objected to the lack of recording previously, and finding that while "matters agreed upon at the conference shall be included [in] the record orally or in writing" normally, "[f]ailure of a party to object ... waives this requirement." Going forward, Judge Lind decided that "if either party objects to discussion of an issue in an R.C.M. 802 conference, the conference will be terminated" (rather than recording it), and the issue instead addressed at the next Article 39 session on the court's calendar.

48. By mandating that the substance of 802 conferences be memorialized on the record only when a party objects, defendant Lind has conditioned the right of public access to significant

aspects of the *Manning* trial on the consent of the parties. The First Amendment and common law rights of access of the press and the public to this important court-martial proceeding cannot be so subjected to the whims and desires of trial counsel.

**Procedural history of Plaintiffs' attempts to obtain relief through the military courts**

49.     Plaintiff CCR wrote two letters to the trial court in the *Manning* proceedings seeking relief similar to that requested through this Complaint. The Reporters' Committee for Freedom of the Press also made a similar request on behalf of forty-seven media organizations including CBS, NBC, ABC, the *New York Times* and the *Washington Post*. In an open court session on April 24, 2012, defendant Lind received CCR's letters into the record, construed the second letter as a motion to intervene for purposes of seeking the relief requested, and, finding no entitlement to relief on the merits, denied the motion to intervene. Specifically, Judge Lind opined that non-parties had no First Amendment right of access to the documentary record of a court-martial, and that while there was a common-law right of access to judicial documents, that common-law entitlement was displaced and/or satisfied by the access to court-martial records provided for by FOIA.

50.     Plaintiffs then sought extraordinary relief from the Army Court of Criminal Appeals (the ACCA), filing a petition on May 23, 2012 pursuant to the All Writs Act, 28 U.S.C. § 1651(a), and the court's own rules. By order issued on May 30, 2012, the ACCA ordered the government to respond to the plaintiffs' petition on all issues except for the challenge to the trial court's practices with respect to R.C.M. 802 off-the-record conferences. The government's brief, filed on June 8, 2012, did not contest that the First Amendment right of public access applies to documents filed or generated in court-martial proceedings, and took no issue with plaintiffs' factual description of the *Manning* proceedings. Instead, the government made essentially one

argument: extraordinary relief is inappropriate because the Freedom of Information Act (FOIA) allows for access (albeit non-contemporaneous access) to the documents at issue. Plaintiffs filed a reply brief on June 15, 2012.

51.     On June 21, 2012, without oral argument, the ACCA issued a one-sentence order, stating: "On consideration of the Petition for Extraordinary Relief in the Nature of a Writ of Prohibition and Mandamus the petition is DENIED." Five days later, Plaintiffs filed in the CAAF, the highest appeals court in the military justice system, a Writ-Appeal Petition seeking review of the ACCA's denial of Plaintiffs' request for extraordinary relief. The government response was filed on July 5, 2012, and Plaintiffs' reply on July 13, 2012. The CAAF then ordered the government to file with it any orders from the trial court on the issue of public access by August 10, 2012. The government responded by filing a section of transcript from Judge Lind's April 24, 2012 pretrial hearing session in which she ruled from the bench on CCR's request for public access to the documents and R.C.M. 802 off-the-record conference sessions. Plaintiffs submitted additional briefing in response on August 24, 2012.

52.     The CAAF held oral argument on October 10, 2012 in Washington DC. After oral argument, the Court issued a supplemental order requesting additional briefing from the parties on three issues: (1) the CAAF's jurisdiction to issue extraordinary relief in light of its 2008 decision in *United States v. Lopez de Victoria*, 66 M.J. 67 (C.A.A.F. 2008), and other precedent; (2) the plaintiffs' standing; and (3) which government officials are authorized to direct public release of the records petitioners had requested.  The parties' supplemental briefing was completed by October 31, 2012.

53.     On April 16, 2013, more than six months after argument, the CAAF (in a 3-to-2 decision accompanied by two separate dissenting opinions) ruled that it lacked jurisdiction to consider

Plaintiffs' claims under the All Writs Act.  The dissenting opinion of Chief Judge Baker noted that "[t]he majority's [ruling] leaves collateral appeal to Article III Courts as the sole mechanism to vindicate the right to a public trial ... beyond the initial good judgment of the military judge." Dissenting Judge Cox agreed with the reasoning of Chief Judge Baker.

54.     The Supreme Court's appellate jurisdiction by writ of certiorari over decisions of the CAAF is set forth in 28 U.S.C. § 1259, and is limited to cases where the CAAF has conducted a mandatory review (as in death penalty and certified cases), *granted* discretionary review of a petition, or otherwise *granted* relief.  Plaintiffs have therefore fully exhausted their ability to seek relief through the military court system. CAAF's decision, as the dissents made clear, leaves plaintiffs with no option except to seek review in an Article III court.

**The Upcoming Manning Trial**

55.     PFC Manning's court-martial trial currently is scheduled to begin on June 3, 2013, and is expected to last for approximately twelve weeks.

56.     The pretrial and trial proceedings have taken place (and for future proceedings, are scheduled to take place) in facilities inside the United States Army installation at Fort George G. Meade, which is located in Anne Arundel County, and lies within this judicial district.

57.      Each of the plaintiffs named in this action has regularly covered the proceedings conducted in the *Manning* court-martial proceedings to date, and plans to attend and/or continue to cover those proceedings during the trial and post-trial proceedings.

58.     It is anticipated that other members of the national and international media, as well as members of the general public, plan to cover and follow the trial proceedings in the *Manning* court-martial. The ability of the named plaintiffs to cover the trial adequately, and the ability of the general public to follow, understand, and assess the importance of the events unfolding at the

trial, have been interfered with by the actions of the defendants to date that are described herein. There is no doubt that those actions by the defendants, including denying access to the public of numerous forms of records of the proceedings in the *Manning* trial, without any or without adequate justification, will continue throughout the trial, absent the grant of injunctive relief from this Court.

## FIRST CLAIM FOR RELIEF
### (First Amendment – Injunctive Relief)

59.    Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

60.    Defendants, by denying Plaintiffs contemporaneous access to judicial documents (including judicial orders, filings, and transcripts or effective substitutes for transcripts such as audio files) in the court-martial proceedings against PFC Bradley Manning, have violated Plaintiffs' right of access to the proceedings guaranteed by the First Amendment.

61.    Defendants, by allowing substantive matters to be argued and decided in off-the-record conferences held out of view of the public, with no articulated justification for the lack of public access, without transcription or the creation of any other record of what transpires in those conferences, and without promptly memorializing the discussion and the decisions on the public record, have violated Plaintiffs' right of access to the proceedings guaranteed by the First Amendment.

62.    Plaintiffs' enjoyment of the right of access to the *Manning* court-martial proceedings, guaranteed under the First Amendment, has been irreparably harmed by the actions of the defendants to date, and continuing irreparable harm is threatened by the orders of defendant Lind with respect to the scheduled trial. As a result, this Court should issue preliminary and permanent injunctive relief directing the defendants, including Judge Lind, to cause to be published or

otherwise made available to plaintiffs and the general public, the records sought by plaintiffs described in this Complaint, and to continue to publish and make available such records throughout the completion of the *Manning* court-martial proceedings.  This Court should also order defendants to provide access to off-the-record conferences or, with respect to past conferences, either to reconstitute the conferences in open court or to make appropriate disclosure of the substance of the conferences on the record.

## SECOND CLAIM FOR RELIEF
### (First Amendment – Writ of Mandamus)

63.    Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

64.    Defendants, by denying Plaintiffs contemporaneous access to judicial documents (including judicial orders, filings, and transcripts or effective substitutes for transcripts such as audio files) in the court-martial proceedings against PFC Bradley Manning, have violated Plaintiffs' First Amendment right of access to the proceedings in a manner that is not consistent with the duties of defendants owed to plaintiffs, and as such subjects the individual defendants to a writ of mandamus issued by this Court pursuant to the authority granted in 28 U.S.C. § 1361.

65.    Defendants, by allowing substantive matters to be argued and decided in off-the-record conferences held out of view of the public, with no articulated justification for the lack of public access, without transcription or the creation of any other record of what transpires in those conferences, and without promptly memorializing the discussion and the decisions on the public record, have violated Plaintiffs' First Amendment right of access to the proceedings in a manner that is not consistent with the duties of defendants owed to plaintiffs, and as such subjects the individual defendants to a writ of mandamus issued by this Court pursuant to the authority granted in 28 U.S.C. § 1361.

66.     Plaintiffs' enjoyment of the right of access to the *Manning* court-martial proceedings, guaranteed under the First Amendment, has been irreparably harmed by the actions of the defendants to date, and continuing irreparable harm is threatened by the orders of defendant Lind with respect to the scheduled trial. As a result, this Court should issue a Writ of Mandamus directing the defendants, including Judge Lind, to cause to be published or otherwise made available to plaintiffs and the general public, the records sought by plaintiffs described in this Complaint, and to continue to publish and make available such records throughout the completion of the *Manning* court-martial proceedings.  This Court should also issue a writ of mandamus directing defendants to provide access to off-the-record conferences or, with respect to past conferences, either to reconstitute the conferences in open court or to make appropriate disclosure of the substance of the conferences on the record.

### THIRD CLAIM FOR RELIEF
### (Federal common law and R.C.M. 806 – Writ of Mandamus)

67.     Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

68.     Defendants, by denying Plaintiffs contemporaneous access to judicial documents (including judicial orders, filings, and transcripts or effective substitutes for transcripts such as audio files) in the court-martial proceedings against PFC Bradley Manning, have violated Plaintiffs' right of access to the proceedings under the common law and R.C.M. 806 in a manner that is not consistent with the duties of defendants owed to plaintiffs, and as such subjects the individual defendants to a writ of mandamus issued by this Court pursuant to the authority granted in 28 U.S.C. § 1361.

69.     Defendants, by allowing substantive matters to be argued and decided in off-the-record conferences held out of view of the public, with no articulated justification for the lack of public access, without transcription or the creation of any other record of what transpires in those conferences, and without promptly memorializing the discussion and the decisions on the public record, have violated Plaintiffs' right of access to the proceedings under the common law and R.C.M. 806 in a manner that is not consistent with the duties of defendants owed to plaintiffs, and as such subjects the individual defendants to a writ of mandamus issued by this Court pursuant to the authority granted in 28 U.S.C. § 1361.

70.     Plaintiffs' enjoyment of the common law right of access to the *Manning* court-martial proceedings has been irreparably harmed by the actions of the defendants to date, and continuing irreparable harm is threatened by the orders of defendant Lind with respect to the scheduled trial. As a result, this Court should issue a Writ of Mandamus directing the defendants, including Judge Lind, to cause to be published or otherwise made available to plaintiffs and the general public, the records sought by plaintiffs described in this Complaint, and to continue to publish and make available such records throughout the completion of the *Manning* court-martial proceedings.  This Court should also issue a writ of mandamus directing defendants to provide access to off-the-record conferences or, with respect to past conferences, either to reconstitute the conferences in open court or to make appropriate disclosure of the substance of the conferences on the record.

## PRAYER FOR RELIEF

Wherefore, plaintiffs respectfully request that this Court enter an order:

(a.)    Declaring that the First Amendment and common law rights of public access apply in the court-martial proceedings of PFC Bradley Manning, and enjoining defendants to make

available to the plaintiffs and to the general public copies of all judicial orders, filings by the parties, and transcripts of proceedings conducted in open court (or substitutes for transcripts such as audio files) in a timely fashion, contemporaneous with the proceedings to which they relate;

(b.)    Ordering that the defendants apply First Amendment principles to any restrictions on public access to such judicial records during the *Manning* proceedings, including (a) enforcing the right to public notice of any request for sealing (or other such restrictions), (b) allowing opportunity for interested parties to be heard, and (c) mandating that the court-martial be required to make case-by-case specific findings that a compelling government interest justifies any restrictions, and that no less-restrictive alternatives are available;

(c.)    Declaring that the First Amendment and common law rights of public access apply to off-the-record conferences in the *Manning* court-martial proceedings, held pursuant to R.C.M. 802, and ordering defendants to disclose on the public record the arguments advanced by the parties and the rulings made by the court-martial in any such conferences in sufficient detail to satisfy those rights, or to reconstitute past R.C.M. 802 conferences in open court;

(d.)    Issuing such writs of mandamus as may be necessary to ensure that the defendants comply with the declarations and rulings of this Court with respect to plaintiffs' First Amendment and common law rights of access to documents and other materials generated during the *Manning* court-martial trial and related proceedings;

(e.)    Maintaining jurisdiction over this action through the completion of the *Manning* trial and any related judicial proceedings in the military courts, to ensure that the defendants

continue to recognize and comply with the rights of the plaintiffs and the general public

to have timely access to the documents and records generated during the course of those

proceedings, consistent with the First Amendment and the common law;

(f.)     Awarding to plaintiffs their costs of pursuing this action, including an award of attorneys'

fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A); and

(g.)     Awarding to plaintiffs such other relief as the Court may deem just and proper.


     /s/ William J. Murphy
William J. Murphy, Bar No. 00497
John J. Connolly, Bar No. 09537
ZUCKERMAN SPAEDER LLP
100 East Pratt St., Ste. 2440
Baltimore, MD 21202-1031
wmurphy@zuckerman.com
jconnolly@zuckerman.com
Tel: (410) 332-0444
Fax: (410) 659-0436

Shayana D. Kadidal
J. Wells Dixon
Baher Azmy, Legal Director
Michael Ratner, President Emeritus
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
kadidal@ccrjustice.org
Tel: (212) 614-6438
Fax: (212) 614-6499

Jonathan Hafetz
169 Hicks Street
Brooklyn, NY 11201
Tel: (917) 355-6896

*Counsel for Plaintiffs*