IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CENTER FOR CONSTITUTIONAL
RIGHTS, et al.,

                         Plaintiffs,

          v.                                          Civil Action No. _____

CHIEF JUDGE COL. DENISE LIND,
et al.,

                         Defendants.

## MEMORANDUM IN SUPPORT OF
## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Shayana D. Kadidal
J. Wells Dixon
Baher Azmy, Legal Director
Michael Ratner, President Emeritus
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
kadidal@ccrjustice.org
Tel: (212) 614-6438
Fax: (212) 614-6499

Jonathan Hafetz
169 Hicks Street
Brooklyn, NY 11201
Tel: (917) 355-6896

William J. Murphy (#00497)
John J. Connolly (#09537)
ZUCKERMAN SPAEDER LLP
100 E. Pratt St., Suite 2440
Baltimore, Maryland 21202
wmurphy@zuckerman.com
jconnolly@zuckerman.com
Tel: (410) 949-1146
Fax: (410) 659-0436

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

I. SUMMARY OF ARGUMENT .................................................................................2

II. STATEMENT OF FACTS ..................................................................................4

    A. Current Status of Public Access to Documents Generated during the
    *Manning* Court-Martial, by Category ..................................................................8

       *(i) Court orders* ...............................................................................................8

       *(ii) Defense and prosecution filings* ..............................................................9

       *(iii) Transcripts or equivalent records of open-court proceedings* ...................10

    B. Off-the-Record Conferences Held Pursuant to R.C.M. 802 ............................11

    C. Procedural History ........................................................................................13

III. ARGUMENT .................................................................................................14

    A. The First Amendment Mandates That the Press and Public Have
    Contemporaneous Access to Documents ...........................................................14

    B. Neither the Government Nor the Military Court Has Identified Any
    Compelling Interest That Would Overcome the Very Strong Presumption
    in Favor of Contemporaneous Public Access .....................................................20

    C. The Trial Court's Practice of Deciding Substantive Issues within R.C.M.
    802 Conferences is Inconsistent with the Public's Right of Access to The
    Court-Martial Proceedings ................................................................................29

    D. Plaintiffs Have Standing ...............................................................................34

    E. Relief Is Available Directly under the First Amendment ..................................36

    F. Plaintiffs Have Met the Requirements for a Preliminary Injunction ................38

    G. This Court Has Power to Issue Mandamus Relief Pursuant to 28 U.S.C. §
    1361 ................................................................................................................39

IV. CONCLUSION................................................................................................41

## MEMORANDUM IN SUPPORT OF
## MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs have moved for preliminary injunctive relief on their claims seeking public access to documents filed or generated in the ongoing court-martial proceedings against Private First Class Bradley Manning, but which the court-martial has refused to publish or otherwise release to the press and public. The documents plaintiffs seek include briefs and other papers filed by the prosecution and defense, court orders, and transcripts of the proceedings (or, if no transcripts exist, equivalent records such as audio tapes). Plaintiffs also seek preliminary injunctive relief on their demand for effective public access to proceedings taking place in off-the-record conferences that, without any articulated justification, have been held outside of public view.

Plaintiffs initially sought relief through the military courts, through and including the Court of Appeals for the Armed Forces ("CAAF"), which determined in a recent 3 to 2 decision that the military appellate courts lacked jurisdiction over such claims. As the CAAF dissenters suggested, plaintiffs now have no option other than to file an action in an Article III Court. The court-martial proceedings against PFC Manning are taking place at Fort George G. Meade, a United States Army installation located in Anne Arundel County, Maryland, within this judicial district,[1] and the trial of PFC Manning is expected to commence on June 3, 2013, making prompt issuance of relief a matter of great urgency.

---

[1]     Venue is thus proper in this district under 28 U.S.C. § 1391(e) because defendants are federal officers and a substantial part of the actions or omissions giving rise to the claim occurred here. *Cf. CCR v. United States*, Slip Op. at 6 (included in the appendix to this brief at A-346) (CAAF, Apr. 16, 2013) (Baker, C.J., dissenting) (noting that in light of CAAF majority's decision, the venue of media-access actions brought in Article III courts would vary with "the fortuity of the geographic locale where a court-martial is convened.").

## I. SUMMARY OF ARGUMENT

Criminal proceedings, including court-martial proceedings, must be open to the public except in limited circumstances. The First Amendment requires public access unless the government demonstrates that closure is necessary to further a compelling government interest and narrowly tailored to serve that interest, and the Court makes specific findings that closure is warranted. The government bears a similarly high burden in attempting to limit public access to documents filed in connection with criminal proceedings.

Of the twelve federal Courts of Appeals that hear criminal appeals, eleven have decided that the First Amendment right of public access applies to judicial documents (and the remaining circuit has assumed without deciding that such a right exists). Because Congress has mandated that the courts-martial apply "[p]retrial [and] trial ... procedures ... [that] apply the principles of law ... generally recognized in the trial of criminal cases in [federal] district courts," 10 U.S.C. § 836, the First Amendment right of access to documents applies in courts-martial as well. Unsurprisingly, even as early as fifteen years ago, Rule 806 of the Rules for Courts-Martial (mandating open proceedings[2]) was interpreted by the Army Court of Criminal Appeals ("ACCA") to mandate access to documents on First Amendment standards in Army courts-martial.

In *United States v. Manning*, the press and public have not had access to any of the government's motions, responses to defense briefs, or filings in the case beyond the initial charges – even in redacted form. No transcripts of any proceedings in the case have been published by the court – even for proceedings that occurred in open court. A number of important substantive issues have been argued and decided in closed off-the-record conferences

---

[2]      The text of Rule 806 is reproduced in the appendix to this brief at A-75.

without any summary of those proceedings made on the public record. Nor have any orders of the Court been published (except for a limited, redacted set of documents recently released pursuant to FOIA). The government has not provided – and cannot provide – any legal basis for withholding these documents from the public. Nor does it appear that the trial court made any of the requisite findings that could support denying access to the conferences or the documents at issue, or provided notice of such envisioned closures and opportunity to object to the press and public. Moreover, substantive matters have frequently been argued and decided behind closed doors in unrecorded conferences out of view of the public, with no articulated justification for the lack of public access or adequate on-the-record memorialization of the substance of the matters discussed and decided at the conference.

These violations are particularly egregious in light of the First Amendment's mandate that even temporary deprivations of the right of public access constitute irreparable harm, and given the Supreme Court's frequent pronouncements that openness promotes not just public confidence in the criminal process but also accuracy in factfinding and ultimate outcomes. The First Amendment thus demands contemporaneous access to documents and proceedings in courts-martial while the proceedings are taking place.

Plaintiffs first sought relief from the trial judge and then from the military appeals courts in mandamus. Unfortunately, after a year spent litigating these issues, the CAAF recently decided that the military appeals courts lack jurisdiction over the mandamus claims of media and public petitioners seeking access to judicial documents. That leaves Article III courts as the only forum in which the press and public may seek vindication of their constitutional right of access. Having exhausted all possible avenues for relief in the military system, plaintiffs seek

preliminary injunctive relief in this Court pursuant to the First Amendment and the mandamus remedy authorized in 28 U.S.C. § 1361.[3]

## II. STATEMENT OF FACTS

Plaintiffs include the Center for Constitutional Rights ("CCR"), a non-profit public interest law firm also engaged in public education, outreach, and advocacy, and a number of individual journalists and news reporting organizations who have covered the court-martial proceedings against PFC Bradley Manning and will continue to do so during the trial scheduled to begin on June 3, 2013. Complaint ¶¶ 3-12.

Notwithstanding the extraordinary degree of public interest in these proceedings, the press and public have been largely denied access to even non-classified documents filed in Manning's court-martial. For example, the government's motion papers have not been disclosed in any form. (*See* Kadidal Decl. ¶ 4, A-48.) A limited number of defense briefs have been made available on the website of defense counsel, apparently by agreement of the parties, but only in heavily redacted form. (*See id*. ¶ 11, A-50.) Thus, at present, the public's continued access to even this subset of redacted defense filings is subject to the willingness of defense counsel to have them made public, and the apparently unfettered ability of the prosecution in the *Manning* case to redact those filings.

Even the trial court's own orders have not been published by the court. (*See id*. ¶ 14, A-51.) Instead, Judge Lind's usual practice has been to read aloud her orders into the record in open court, often at breakneck speeds approaching 180 words per minute. (*See* Supp. Gosztola Decl. ¶ 5, A-325; Pilkington Decl. ¶¶ 21, 27-28, A-313, A-316.) None of these orders, despite being

---

[3]      Section 1361 states: "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

disclosed in full in open court, have thereafter been published by the court in written form so that the public and press may analyze the court's rulings and reasoning.

In fact, the defendants have not published transcripts or otherwise made available to the press and the general public the records of these or any other open-court proceedings. (*See* Kadidal Decl. ¶¶ 4, 6, 9, A-48-50.) Nor have any audio files of the proceedings taking place in open court been released by the court to the public.

Although the public to date has been permitted to attend most portions of Manning's pretrial court-martial proceedings (notably excluding the numerous off-the-record conferences that have taken place), public access to court documents has been inexplicably denied.  Thus, the press and public are unable to engage in careful observation and analysis of the issues arising during what is arguably one of the most controversial, high-profile court-martials since the trial of Lt. William Calley for the My Lai Massacre in Vietnam, and the most important case of any kind involving the alleged disclosure of classified information since a military analyst, Professor Daniel Ellsberg, released the Pentagon Papers to the *New York Times* and *Washington Post*.

Indeed, the restrictions on access to these basic documents in the *Manning* case have made it exceedingly difficult for credentialed reporters, including several of the named plaintiffs, to cover the proceedings consistent with their journalistic standards and professional obligations. (*See* Gosztola Decl. ¶¶ 4-8, A-69-70; Pilkington Decl. ¶¶ 11, 13-23, 27-31, A-309, A-310-14, A-316-17.)

To the best of plaintiffs' knowledge,[4] neither Judge Lind, nor any other government official, ever has indicated in the military court proceedings that the denial of access to these

---

[4]     Plaintiffs add this qualification only because, as noted below, the issue of public access was argued by the parties in a closed, off-the-record unrecorded conference. However, nothing in Judge Lind's order on CCR's request for access (A-172-75) indicates that there is any reason for

judicial documents and records is necessitated by a need to preserve secrets or classified information, to maintain the integrity of the jury pool, or to promote any other legitimate governmental interest. (Indeed, PFC Manning has recently waived his right to a jury trial, mooting any concern that might exist for contamination of the potential jury pool.)  Nor has the prosecution or any other agency of the government moved to seal parts of the judicial record in the *Manning* proceedings, such that members of the press and public would have an opportunity to object. Nor, from the record that is available, has there been any indication that defendant Lind has made some document-specific finding of justification for restricting all or partial access to the documents described above, after careful consideration of less-restrictive alternatives. Finally (although even this would be impermissible under the First Amendment), neither defendant Lind nor any other military authority has indicated that the military courts will eventually allow for publication of these documents, and is merely temporarily withholding publication to allow for more careful review to ensure that no sensitive information that inadvertently slipped into the public record in open court is subsequently republished by the court.

For all practical purposes, Judge Lind has effectuated a blanket closure order over the proceedings in the *Manning* case. Those few members of the public who are able to visit the courtroom are given access to the open court proceedings, and certain redacted defense filings have been made available on defense counsel's internet site. But as to the rest of the documents at issue here, a blanket bar on public access has been the rule.

As noted in more detail below, several important substantive issues have also been addressed and resolved, outside of public view, in off-the-record conferences during the

---

her ruling denying public access to the documents other than her belief that the First Amendment right of access simply does not apply to these documents.

*Manning* pretrial proceedings, including entry of a case management order, a pretrial publicity order and a protective order for the handling of classified information. (*See* Kadidal Decl. ¶¶ 13-14 & Exhibit A, A-50-51, A-55-58.) The defense eventually moved to have all such off-the-record conferences recorded and transcribed, but that defense motion was denied. (*See* O'Brien Decl. ¶¶ 4-7, A-71-74.)

This cloak of secrecy has been drawn over the *Manning* proceedings despite written requests made to the trial court by several of the named plaintiffs (made on their own behalf and on behalf of the public) and by various other media organizations seeking greater public access. (A-55-67.) Judge Lind construed the last of those letters from plaintiff CCR as a motion to intervene for the purpose of seeking to vindicate the right of public access to the *Manning* proceedings, and denied the motion. (*See* Kadidal Decl. ¶ 8, A-49; transcript of oral order at A-173.) CCR sent an attorney to the April 23, 2012 pretrial hearing during which that order was entered, but despite a request included in the letter, CCR's attorney was not given the opportunity to address the court. (A-173.)

Judge Lind's decision indicated that she believes the military appeals courts (including the CAAF and the ACCA) have only recognized a limited common law right of access to judicial documents, rather than a right of access grounded in the First Amendment. (*See* Kadidal Decl. ¶ 9, A-49-50; transcript of oral order at A-173-75.) Judge Lind's views on this topic have been published previously in an article, Lt. Col. Denise R. Lind, *Media Rights of Access to Proceedings, Information, and Participants in Military Criminal Cases*, 163 Mil. L. Rev. 1, 45-53 (2000). Judge Lind, consistent with her previous writings, has indicated in her ruling denying public access that she believes (erroneously) that the Freedom of Information Act ("FOIA")

provides an adequate alternative mode of access to the documents in question, displacing the common-law right of access. (A-174-75.)

As further demonstrated below, it is readily apparent, in the context of the *Manning* case and otherwise, that the limited right of access to military court records created by FOIA, subject to lengthy delays and numerous exemptions, is not adequate to assure the public's and the press's rights of access to documents that are relevant to the newsworthy issues being adjudicated in the *Manning* trial and that will enhance full, robust, and timely public debate about those issues.

**A.   Current Status of Public Access to Documents Generated during the *Manning* Court-Martial, by Category**

**(i)    *Court orders***

To date the defendants have not caused to be published any of the trial court's own orders. However, *after* the oral argument of Plaintiffs' case in the CAAF, on February 27, 2013, the military released 84 opinions of the trial court, apparently in response to a third party FOIA request. (*See* Supp. Gosztola Decl. ¶¶ 7-8, A-326.) Many of these opinions were not released to the public until a year after they had been issued in the *Manning* proceedings. (*See id.* ¶ 10, A-326.) Moreover, the released versions of all the opinions contain redactions that would not be allowed under any conceivable application of a First Amendment standard. For instance, the name of the trial judge was redacted from all of the released orders even though Judge Lind's identity is obviously a matter of public record and she herself had read many of the orders aloud in open court sessions. (*See id.* ¶ 12, A-328.) In other opinions, highly exculpatory information favoring the defense was redacted from the FOIA-released versions of the opinions, under the military's apparent interpretation of various FOIA exemptions, even though that information also had been read aloud in open court. (*See id.* ¶ 13, A-328.)

Significantly, a number of Judge Lind's orders were not released in the military's February 27, 2013 FOIA production, including a January 7, 2013 ruling on whether PFC Manning had been "unlawfully punished" by his harsh conditions of pretrial confinement – a matter of exceptional public interest – as well as a February 26, 2013 order that had been read aloud in open court. (*See id*. ¶ 9, A-326.)

Finally, during prior litigation of this issue in the CAAF, that Court ordered the trial court to produce a transcript of Judge Lind's oral ruling on CCR's request for public access to the court-martial proceedings. The transcript produced to the CAAF included that order and also (seemingly inadvertently) included three additional orders described below.

### (ii)    *Defense and prosecution filings*

During the course of the *Manning* pretrial proceedings, and apparently by agreement of the parties as ratified by the court-martial, defense counsel have periodically disclosed on a defense website redacted versions of certain motions filed by defense counsel. (*See* Kadidal Decl. ¶ 11, A-50.) Thus, at present, the public's continued access to even these defense filings is subject to the willingness of defense counsel to publish them, and the agreement of the prosecution concerning their unredacted content.

Under the arrangement by which these defense filings are posted to defense counsel's website, the government is allowed to review and redact the filings prior to their posting. This frequently creates significant delays between filing and posting. Moreover, it appears that the prosecution has been insisting that every word quoted from a government filing be redacted from the defense filing in which it is quoted. (*See id*. ¶ 12, A-50.) By contrast, the prosecution in the *Manning* case has not made available to the public a single one of its briefs and other filings --

notwithstanding that the prosecutors frequently appear to be quoting from their briefs while arguing at the podium in open court. (*See id*.)

      (iii)      *Transcripts or equivalent records of open-court proceedings*

It is not clear from the existing record whether the *Manning* court produces a daily transcript of proceedings taking place in open session, or whether it relies solely on audio recordings of the open court proceedings, or whether it sometimes supplements the audio recordings with a transcript. All courtroom proceedings are subject to audio recording. (*See* Supp. Kadidal Decl. ¶ 2, A-234.) At the end of each session, the defense receives a CD containing the audio files, which, pursuant to defendant Lind's direction, defense counsel is only permitted to use in support of his motions. Occasionally, a court reporter has been present and uses either a dictaphone or stenographic shorthand to record the proceedings as well. *See id*. To date, the defendants have not made any of these various stenographic or audio records of the proceedings available to the public.

There are two documents that were not released to the public by the court, but are publicly available, providing transcripts of what was said in open court during portions of the Manning pretrial proceedings. The first is a small section of transcript from the trial court's April 24 pretrial hearing, which was produced specifically in response to the order of the CAAF prior to oral argument on Plaintiffs' writ appeal petition. (A-150-77.) This transcript was not released directly to the public, but is now freely available (including on CCR's website). It contains not only the trial court's order on CCR's request for public access (A-173-75), but also (apparently by accident) the court's previously-unreleased order regarding amicus briefs (A-165), its Security Order (A-159-64), and its Interim Protective Order (A-167-72). The second is the 34-page-long *Statement in Support of Providence Inquiry by PFC Bradley Manning*, which was

released to the public on the same Army FOIA release website that the court's 84 orders were published on – although the Army's public release took place only after an audio version of PFC Manning reading the lengthy statement in open court was leaked onto the internet by parties unknown.[5]

## B.    Off-the-Record Conferences Held Pursuant to R.C.M. 802

A number of substantive matters, including the very issue of public access to documents, have been argued and decided by defendant Lind in off-the-record conferences conducted out of view of the public, with no articulated justification for the lack of public access. (*See* Kadidal Decl. ¶ 13 & Exhibit B, A-50-51, A-61.) There is, to Plaintiffs' knowledge, no recording, transcript, or other record of any of those arguments and rulings.

These conferences have been held under the putative authorization of Rule 802 of the Rules for Courts-Martial ("R.C.M.") (reproduced at A-75-76). Rule 802 by its terms contemplates the resolution of "routine or administrative matters" in off-the-record conferences, but allows that substantive matters may be resolved therein by "consent of the parties." Manual for Courts-Martial, Discussion, R.C.M. 802 (A-75). However, all "matters agreed upon at a conference shall be included on the record." R.C.M. 802(b). (A-75) Despite the provisions of Rule 802, Judge Lind has decided substantive matters in off-the-record conferences without promptly memorializing the parties' agreements or her decisions on the record.

R.C.M. 1103(b)(2)(B) states that for general courts-martial, "the record of trial shall include a verbatim written transcript of all sessions," except for deliberations by the jury or

---

[5]    *See* https://www.rmda.army.mil/foia/FOIA_ReadingRoom/(a)(2)(D)%20-%20Records%20released%20to%20the%20public%20under%20t/PFC%20Bradley%20E.%20Manning/Manning%20Statement%20for%20release%20on%2015%20Mar%202013.pdf

presiding judge on guilt or innocence.[6] The Discussion note to the rule states that this "verbatim transcript" requirement "includes . . . all proceedings including sidebar conferences. . . . [and that while] conferences under R.C.M. 802 need not be recorded, . . . matters agreed upon at such conferences *must* be included on the record." (Emphasis added.) During the June 6, 2012 pretrial ("Article 39") proceedings, PFC Manning's defense counsel raised a number of objections to the court's R.C.M. 802 practice: (1) the prosecution, it claimed, was relitigating already-decided motions during Rule 802 conferences; (2) the public summary of issues decided in 802 conferences was generally not adequate; and (3) most importantly, the prosecution had been taking positions in 802 conferences and then later taking contradictory positions in open court. (*See* O'Brien Decl. ¶ 5, A-72.)

That latter problem, the defense contended, should be addressed by granting its motion that all 802 conferences in the case be recorded and transcribed.  (*See id*. ¶¶ 4-5, A-71-72.) Judge Lind denied the motion, noting that defense counsel had not objected to the lack of recording previously, and finding that while "matters agreed upon at the conference shall be included [in] the record orally or in writing" normally, "[f]ailure of a party to object ... waives this requirement." (*See id*. ¶ 7, A-73.) Going forward, Judge Lind decided that "if either party objects to discussion of an issue in an R.C.M. 802 conference, the conference will be terminated" (rather than recording it), and the issue instead addressed at the next Article 39 session on the court's calendar. (*See id*. ¶ 7, A-73-74.)

By mandating that the substance of 802 conferences be memorialized on the record only when a party objects, defendant Lind has conditioned the right of public access to significant aspects of the *Manning* trial on the consent of the parties. The First Amendment and common

---

[6]     The Rule and discussion note are available at pages 193-94 of the following PDF version of the Rules for Courts-Martial: http://www.loc.gov/rr/frd/Military_Law/pdf/MCM-2012.pdf

law rights of access of the press and the public to a court-martial proceeding cannot be so subjected to the whims and desires of trial counsel.

## C.      Procedural History

After requesting relief from the trial court, *see* Complaint ¶ 49, and spending nearly a full year litigating a petition for mandamus relief up through the military courts of appeals, *see id.* ¶¶ 50-53, on April 16, 2013 the CAAF (the highest court in the military system), in a 3-to-2 decision accompanied by two separate dissenting opinions, ruled that it lacked jurisdiction to consider Plaintiffs' claims under the All Writs Act. (The slip opinion is reproduced at A-331-354.) The dissenting opinion of Chief Judge Baker noted that "[t]he majority's [ruling] leaves collateral appeal to Article III Courts as the sole mechanism to vindicate the right to a public trial ... beyond the initial good judgment of the military judge." (A-346.) Dissenting Judge Cox agreed with the reasoning of Chief Judge Baker. (A-349 n.1.)

Because the Supreme Court's appellate jurisdiction by writ of certiorari over decisions of the CAAF, set forth in 28 U.S.C. § 1259, is limited to cases where the CAAF has conducted a mandatory review (as in death penalty and certified cases), *granted* discretionary review of a petition, or otherwise *granted* relief, plaintiffs have fully exhausted their ability to seek relief through the military court system. CAAF's narrow majority decision, as the dissents made clear, leaves plaintiffs with no option to assert a public right of access to the documents generated in the *Manning* trial except by seeking to enforce their First Amendment and common law rights in an Article III court.

## III. ARGUMENT

**A.** **The First Amendment Mandates That the Press and Public Have Contemporaneous Access to Documents in Courts-Martial**

The right of public access to judicial proceedings is rooted in the common law and the First Amendment to the United States Constitution. *See, e.g.*, *Nixon v. Warner Comm'ns, Inc.*, 435 U.S. 589, 597 (1978); *In re Washington Post Co.*, 807 F.2d 383, 390-91 (4th Cir. 1986); *Washington Post Co. v. Robinson*, 935 F.2d 282, 287-88 (D.C. Cir. 1991). It includes not only the right to attend court proceedings but also the right to freely access court documents. *See Washington Post Co. v. Robinson*, 935 F.2d 282, 287 (D.C. Cir. 1991) ("The First Amendment guarantees the press and the public a general right of access to court proceedings and court documents unless there are compelling reasons demonstrating why it cannot be observed.") (citing cases).  Every federal Court of Appeals to consider the question has ruled that the First Amendment right of public access to judicial proceedings also extends to judicial records (or, in one case, has assumed without deciding that such a right exists).[7]

---

[7]    Of the thirteen federal Courts of Appeals, only the Federal Circuit has not considered the issue, and only the Tenth has not decided it outright: *See Globe Newspaper Co. v. Pokaski*, 868 F.2d 497 (1st Cir. 1989); *In re Globe Newspaper Co.,* 729 F.2d 47 (1st Cir. 1984) (bail hearings); *United States v. Haller*, 837 F.2d 84 (2d Cir. 1988) (plea agreements); *In re New York Times Co.*, 828 F.2d 110 (2d Cir. 1987), *cert. denied,* 485 U.S. 977 (1988); *United States v. Smith*, 787 F.2d 111, 116 (3d Cir. 1986) and 776 F.2d 1104 (3d Cir. 1985); *In re Washington Post Co.*, 807 F.2d 383 (4th Cir. 1986); *Hearst Newspapers, L.L.C. v. Cardenas-Guillen*, 641 F.3d 168, 172, 176-77 (5th Cir. 2011) (finding First Amendment right in favor of media petitioners seeking, inter alia, unsealing of records); *Applications of NBC*, 828 F.2d 340 (6th Cir. 1987); *United States v. Ladd (In re Associated Press)*, 162 F.3d 503 (7th Cir. 1998); *United States v. Peters*, 754 F.2d 753, 763 (7th Cir. 1985) (trial exhibits); *In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569 (8th Cir. 1988) (documents filed to support search warrant); *Oregonian Publ'g Co. v. United States Dist. Court*, 920 F.2d 1462 (9th Cir. 1990); *Associated Press v. United States Dist. Court*, 705 F.2d 1143 (9th Cir. 1983); *United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1028-31 (11th Cir. 2005) (mandating First Amendment access to sealed docket and judicial records in criminal case); *Washington Post v. Robinson*, 935 F.2d 282, 287-88 (D.C. Cir. 1991); *cf. United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997) ("assum[ing] without deciding that access to judicial documents is governed by the analysis articulated in *Press-*

Indeed, the unanimity of the federal Courts of Appeals means that throughout the federal system, district courts are obliged to apply First Amendment principles to govern public access to judicial documents. That has implications for court-martial practice under the Uniform Code of Military Justice ("U.C.M.J.") as well, for Congress has mandated in section 36 of the U.C.M.J. that

> [p]retrial, trial, and post trial procedures ... for cases arising under [the U.C.M.J.] triable in courts-martial ... may be prescribed by the President by regulations which shall, so far as he considers practicable, apply the principles of law and the rules of evidence generally recognized in the trial of criminal cases in the United States district courts....

10 U.S.C. 836(a). Based on this principle of conformity with federal criminal practice, the CAAF has repeatedly enforced standards derived from the uniform practice of the federal district courts. *See, e.g.*, *United States v. Nieto*, 66 M.J. 146, 150 (C.A.A.F. 2008) (looking to "generally applicable standard for considering this question in the trial of criminal cases" in district courts); *United States v. Valigura*, 54 M.J. 187, 191 (C.A.A.F. 2000) ("Congress intended [with § 836] that, to the extent 'practicable,' trial by court-martial should resemble a criminal trial in a federal district court."); *United States v. St. Blanc*, 70 M.J. 424, 429 (C.A.A.F. 2012) ("Nothing in the MCM or UCMJ suggests any reason for this Court to part ways with the federal courts" (citing U.C.M.J. § 36)); *Loving v. United States*, 64 M.J. 132, 140 (C.A.A.F. 2006) (applying *Teague* retroactivity analysis from federal courts, citing § 836); *United States v. Dowty*, 60 M.J. 163, 172 (C.A.A.F. 2004) (applying "federal rule" as to jury selection, citing § 836).

---

*Enterprise II*"); *Riker v. Federal Bureau of Prisons*, 315 Fed. Appx. 752, 756 (10th Cir. 2009) (unpublished opinion) (same); *United States v. Gonzales*, 150 F.3d 1246,1255-61 (10th Cir. 1998) (finding certain CJA records to be administrative not judicial in nature; as to others, assuming without deciding *Press-Enterprise* applies), *cert. denied*, 525 U.S. 1129 (1999).

The Federal Circuit has not addressed the First Amendment argument, but recognizes a common-law right of access. *See In re Violation of Rule 28(d)*, 635 F.3d 1352, 1357 (Fed. Cir. 2011). Of course, criminal proceedings do not lie within the jurisdiction of the Federal Circuit. *See* 28 U.S.C. § 1295 (setting forth jurisdiction).

In addition, the Rules for Court Martial expressly contain the mandate that "courts-martial shall be open to the public." *See* R.C.M. 806.  Thus, there is nothing in the governing rules for court-martial proceedings that indicates in any way that the President intended that those proceedings should not be subject to the same First Amendment principles governing public rights of access to the trials of federal criminal cases in the District Courts.

The right of public access exists primarily to ensure that courts have a "measure of accountability" and to promote "confidence in the administration of justice." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995). Access to information is especially important when documents generated by a trial concern matters relating to national defense and foreign relations, where public scrutiny is the only effective restraint on government. *See New York Times v. United States*, 403 U.S. 713, 728 (1971) (Stewart, J., concurring) ("In the absence of the governmental checks and balances present in other areas of our national life, the only effective restraint upon executive policy and power in the areas of national defense and international affairs may lie in an enlightened citizenry -- in an informed and critical public opinion which alone can here protect the values of democratic government.").

The Supreme Court also has repeatedly stated that openness has a positive effect on the truth-determining function of judicial proceedings. *See Gannett Co. v. DePasquale*, 443 U.S. 368, 383 (1979) ("Openness in court proceedings may improve the quality of testimony, induce unknown witnesses to come forward with relevant testimony, cause all trial participants to perform their duties more conscientiously"); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 596 (1980) (open trials promote "true and accurate fact-finding") (Brennan, J., concurring); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606 (1982) ("[P]ublic scrutiny enhances the quality and safeguards the integrity of the factfinding process."); *see also Brown &*

*Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983) (*Gannett*'s beneficial "fact-finding considerations" militate in favor of openness "regardless of the type of proceeding"). This effect is tangible, not speculative: the Supreme Court has held that openness can affect outcome. Accordingly, if the government attempts to restrict or deny the right of access, it bears the strictest of burdens: it must show that the limitation is necessary to protect a compelling government interest and is narrowly tailored to serve that interest.  *See*, *e.g.*, *Robinson*, 935 F.2d at 287.

Moreover, public access must be contemporaneous with the actual proceedings in order to maximize this error-correcting aspect of openness. The Supreme Court has long held that contemporaneous access to criminal proceedings is necessary to serve the various functions – encouraging public legitimation, diligent and upstanding official behavior, and error-correction – that public access has traditionally served. As early as 1948 the Court had announced that "[t]he knowledge that every criminal trial is subject to *contemporaneous review* in the forum of public opinion is an effective restraint on possible abuse of judicial power." *In re Oliver*, 333 U.S. 257, 270 (1948) (emphasis added). *Oliver* was decided under the Due Process Clause but federal courts have extended the contemporaneous access principle to Sixth Amendment cases where defendants sought to make proceedings and information public. *Huminski v. Corsones*, 386 F.3d 116, 143 (2d Cir. 2004), *as amended on reh'g*, 396 F.3d 53 (2d Cir. 2005) ("Sixth Amendment guarantees ... the right to a public trial principally to protect the defendant from prosecutorial and judicial abuses by permitting contemporaneous public review of criminal trials."); *United States v. Wecht*, 537 F.3d 222, 229-30 (3d Cir. 2008) ("Although post-trial release of information may be better than none at all, the value of the right of access would be seriously undermined if it could not be contemporaneous."); *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*, 24 F.3d

893, 897 (7th Cir. 1994) ("In light of the values which the presumption of access endeavors to promote, a necessary corollary to the presumption is that once found to be appropriate, access should be immediate and contemporaneous. ... The newsworthiness of a particular story is often fleeting. To delay or postpone disclosure undermines the benefit of public scrutiny and may have the same result as complete suppression.").

Legitimacy, accountability, accuracy: these three principles motivating the Sixth Amendment right of contemporaneous access are the same values cited by the Supreme Court in support of the First Amendment right of public access recognized in *Richmond Newspapers* and its progeny. The combination of facts leading federal courts to need to decide whether a First Amendment claim for access to documents can be satisfied by a non-contemporaneous release occurs very rarely; but when it has, the courts have decided that release must be contemporaneous to be effective and thus to satisfy the First Amendment. *See Chicago Tribune Co. v. Ladd (In re AP)*, 162 F.3d 503, 506 (7th Cir. 1998) (in case involving request for access to "various documents that were filed under seal," Court of Appeals noted that "the values that animate the presumption in favor of access require as a 'necessary corollary' that, once access is found to be appropriate, access ought to be 'immediate and contemporaneous'"); *United States v. Smalley*, 9 Media L. Rep. 1255, 1256 (N.D. Tex. 1983) (granting newspapers' "motions for contemporaneous access" under the First Amendment to transcripts of evidence "now being introduced" at trial because "without contemporaneous access to the transcripts ... the press would be foreclosed from reporting at all on a significant portion of the prosecution's evidence"). *See also Associated Press v. United States Dist. Court for Cent. Dist.*, 705 F.2d 1143 (9th Cir. 1983) (even a 48-hour presumptive sealing period for documents, which was

designed by district court to allow parties to make more permanent closure motions, violates First Amendment right of public access).

These principles are especially relevant in cases involving media plaintiffs. The failure to publish the court orders, government briefs, and transcripts here has had a dramatically inhibiting effect on the ability of the press to report fully and accurately on the *Manning* court-martial. *See* Gosztola Decl. at ¶¶ 3-9 (JA-24-25). The Supreme Court's prior restraint cases make clear that the blanket ban on prior restraints is motivated in part by the need to have *timely reporting* on matters of public interest, without which this important check on judicial error will no longer function:

> the order at issue [here, prohibiting publication of certain facts derived either from public judicial proceedings or independent sources] - like the order requested in [the Pentagon Papers case] - does not prohibit but only postpones publication. Some news can be delayed ... without serious injury [for editorial reasons, but d]elays imposed by governmental authority are a different matter. ... As a practical matter ... the element of time is not unimportant if press coverage is to fulfill its traditional function of bringing news to the public promptly.

*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 560-61 (1976). The judicially recognized need for contemporaneous access to court records by the press and public is consistent with the general First Amendment principle that the loss of First Amendment rights "for even minimal periods of time" constitutes irreparable harm, *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (citing *New York Times Co. v. United States*, 403 U.S. 713 (1971)), a principle that underlies the many precedents allowing press petitioners to seek preliminary injunctions against measures restricting such First Amendment rights of public access, and to immediately appeal denials of public access under the collateral order rule, *see United States v. Wecht*, 537 F.3d 222, 229-30 (3d Cir. 2008).

**B.      Neither the Government Nor the Military Court Has Identified Any Compelling Interest That Would Overcome the Very Strong Presumption in Favor of Contemporaneous Public Access**

Even in cases implicating national security interests asserted by the government, the First Amendment demands that "[d]ocuments to which the public has a qualified right of access may be sealed only if 'specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *United States v. Aref*, 533 F.3d 72, 82 (2d Cir. 2008) (quoting *Press-Enter. Co*, 478 U.S. at 13-14). "[A] judge must carefully and skeptically review sealing requests to insure that there really is an extraordinary circumstance or compelling need" for the request. *Video Software Dealers Ass'n v. Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994). In assessing whether denial of public access is narrowly tailored, courts must "consider less drastic alternatives to sealing the documents, and ... provide specific reasons and factual findings supporting [the] decision to seal the documents and for rejecting the alternatives." *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000) (citations omitted); *see also United States v. Hershey*, 20 M.J. 433, 436 (C.M.A. 1985). The Supreme Court has stated that when a trial court finds that the presumption of access has been rebutted by some countervailing interest, that "interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 510 (1984).

The public is also entitled to notice of a party's request to seal the judicial record and to an opportunity to object to the request. *See In re Washington Post Co.*, 807 F.2d 383, 390-91 (4th Cir. 1986) (any motion or request to seal a document or otherwise not disclose a document to the public must be "docketed reasonably in advance of [its] disposition so as to give the public and press an opportunity to intervene and present their objections to the court." (quoting *In re Knight*

*Publishing Co.*, 743 F.2d 231, 234 (4th Cir. 1984))); *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 474-76 (6th Cir. 1983); *United States v. Criden*, 675 F.2d 550, 557-60 (3d Cir. 1982) (due process requires that the public be given some notice that closure may be ordered in a criminal proceeding to give the public and press an opportunity to intervene and present their objections to the court).

The common law right of access to documents is virtually coterminous with the First Amendment. A common law right attaches where documents are properly considered "judicial documents," including at a minimum documents that play a role in determining the litigants' substantive rights. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (including documents "relevant to the performance of the judicial function and useful in the judicial process"); *see also United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) (noting varying standards in different circuits). The motions, transcripts and orders at issue here clearly qualify as "judicial documents." The presumption in favor of public access to such documents will be given the strongest weight possible. *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 140 (2d Cir. 2004) ("presumptive right to 'public observation' is at its apogee when asserted with respect to documents relating to 'matters that directly affect an adjudication.'" (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995))). Under the common law standard, the public interest favoring access must be "heavily outweighed" by other asserted interests to overcome the presumption in favor of public access. *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000) (citations omitted); *see also Stone v. Univ. of Maryland Medical Sys. Corp.*, 855 F.2d 178, 180-81 (4th Cir. 1988). "[O]nly the most compelling reasons can justify non-disclosure of judicial records." *Gitto v. Worcester Telegram & Gazette Corp. (In re Gitto Global Corp.)*, 422 F.3d 1, 6 (1st Cir. 2005); *see also In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 474-476

(6th Cir. 1983) ("Appellants seek to vindicate a precious common law right, one that predates the Constitution itself. While the courts have sanctioned incursions on this right, they have done so only when they have concluded that 'justice so requires.' To demand any less would demean the common law right.").

In *United States v. Scott*, 48 M.J. 663 (Army Ct. Crim. App. 1998), *pet'n for rev. denied*, 1998 CAAF LEXIS 1459 (C.A.A.F. 1998), the ACCA applied standards for public access to documents generated during a court-martial proceeding that were identical to the First Amendment standards discussed herein. The *Scott* Court did not explicitly *state* that the First Amendment applied to the court documents — as eleven federal Courts of Appeal have done — nor did it explicitly assert that it was applying some alternate standard derived from the common law. But the court clearly applied the same test that would have applied had it expressly found the First Amendment applicable. First, it criticized the trial court for ordering sealing of documents without finding factual support for a compelling interest, stating that the "party seeking closure must advance an overriding interest that is likely to be prejudiced," *id*. at 666, and that that interest must "be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered," *id*. at 665-66. The *Scott* court found nothing in the record supporting a factual finding that a compelling interest was present: instead, the "military judge sealed the entire stipulation" — the contested document — "on the basis of an unsupported conclusion rather than on the basis of an overriding interest that is likely to be prejudiced if the exhibit is not sealed." *Id*. at 666. Moreover, "[r]ather than narrowly tailoring the order to seal those portions" that implicated any compelling interest, *id*. at 667 n.4, the trial judge erroneously sealed the "entire" document and all its enclosures, *id*. These are exactly the same standards that a court would apply under the First Amendment, as the

ACCA itself noted earlier in the *Scott* opinion.[8] Because the trial judge left "no basis evident in the record of trial [on appeal] that would justify sealing," *id.* at 667, the court found the trial court had committed an abuse of discretion, and vacated the order of sealing. At least one federal court, citing ACCA's decision in *Scott*, 48 M.J. at 665, 666, has implied that the *Scott* decision recognized a First Amendment right of access. *See Dayton Newspapers, Inc. v. United States Dep't of the Navy*, 109 F. Supp. 2d 768, 772 (S.D. Ohio 1999).

None of these necessary elements — public notice and opportunity to be heard, consideration of less-drastic alternatives (as part of a narrow-tailoring or common-law inquiry), and specific reasoning supported by factual findings justifying the limitations on public access that have been imposed and rejecting less-restrictive alternatives — appear to have been satisfied by the military court in PFC Manning's case.

To begin with, no public notice of any motion by the government to seal parts of the judicial record here was made such that members of the press and public would have an opportunity to object. Moreover, CCR's legal representative at the April 23, 2012 hearing was not given the opportunity to address the court. (*See* Kadidal Decl. ¶ 8, A-49.) If there had been notice and an opportunity to be heard, this Court might now be reviewing a record of the trial court's reasoning, sharpened by adversarial challenge, and any factual support for its conclusions. The government bears the burden of proof, and "must demonstrate a compelling need to exclude the public ... the mere utterance by trial counsel is not sufficient." *United States v. Hershey*, 20 M.J. 433, 436 (C.M.A. 1985). Here, there is no evidence that the government met this heavy burden.

---

[8]     *Scott* noted that the First Amendment demands that "closure must be narrowly tailored to protect [the asserted compelling] interest[, and the] trial court must consider reasonable alternatives to closure [and] must make adequate findings supporting the closure to aid in review." 48 M.J. at 666 n.2.

From the existing public record, there is no evidence that the trial court here engaged in any consideration of alternatives. Redaction of sensitive information is the most commonplace alternative used by the courts to allow partial public disclosure of documents containing sensitive information. However, there is no indication that Judge Lind even considered this simple expedient to allow publication of redacted versions of government filings, transcripts and its own orders. No transcripts have been released and there is currently no schedule contemplated for publication of redacted transcripts, despite the fact that several hearings have been entirely open to the public. (*See* Kadidal Decl. ¶ 14, A-51.). Needless to say, there can be no justification for the court's failure to publish transcripts of proceedings taking place in open court. Similarly, the court has read into the record several of its own orders. (*See id.*; Gosztola Decl. ¶ 4, A-69.) There can be no possible justification for not making those orders available to the general public by publishing them in written form as well.[9] *See United States v. Antar*, 38 F.3d 1348, 1359-60 (3d Cir. 1994) ("the right of access ... encompasses equally the live proceedings and the transcripts which document those proceedings")[10]; *see also Globe Newspaper Co. v. Pokaski*, 868 F.2d 497

---

[9]     Similarly, there should be no possible justification for a complete bar on access to every last word of the government filings in this case, especially since the government appeared to quote from portions of its briefs during the hearing on April 23. (*See* Kadidal Decl. ¶ 12, A-50.)

[10]     In *Antar* the Third Circuit further stated that:

> *openness* is ongoing—a status rather than an event. At the heart of the Supreme Court's right of access analysis is the conviction that the public should have access to *information*; the Court never has suggested that an open proceeding is only open to those who are able to be bodily present in the courtroom itself. True public access to a proceeding means access to knowledge of what occurred there. It is served not only by witnessing a proceeding firsthand, but also by learning about it through a secondary source. In fact, recognition of the crucial role of secondary representation is the basis for the Court's protection of the rights of the media, who have been described by the Court as "functioning as surrogates for the public." *Richmond Newspapers, Inc.*, 448 U.S. at 574. Access to the documentation of an open proceeding, then, facilitates the openness of the proceeding itself by assuring the broadest dissemination. It would be an odd result

(1st Cir. 1989) (finding no justification for blanket sealing of court records of cases not ending in conviction; fact that records had formerly been accessible to public was irrelevant to whether right of public access was satisfied).

Plaintiffs have no reason to believe that the *Manning* court ever has made a document-specific finding of justification for restricting public access to any of the documents in question, after careful consideration of less-restrictive alternatives, and has kept those document-specific orders under seal. But even if that were the case, without any reference to such findings being available on the public record, the press and public have no ability to challenge on appeal whatever specific rationale for restricted access the court relied on. The law forbids courts from so immunizing their decisions to seal parts of their records from both immediate public scrutiny and later appellate challenge to the decision to seal. *See United States v. Ortiz*, 66 M.J. 334, 340 (C.A.A.F. 2008) ("this Court, following the lead of the United States Supreme Court, requires that a military judge make *some* findings from which an appellate court can assess whether the decision to close the courtroom was within the military judge's discretion... On the current state of the record we have no way of knowing the military judge's reasons or reasoning for [closure] ... mak[ing] it impossible to determine whether the military judge properly balanced" interests at stake).

There is also no indication that the court is withholding publication of the filings, transcripts and orders pending further review to ensure that no sensitive information that

---

indeed were we to declare that our courtrooms must be open, but that transcripts of the proceedings occurring there may be closed, for what exists of the right of access if it extends only to those who can squeeze through the door.

*Antar*, 38 F.3d at 1359-60; *see also id*. at 1360 n.13 ("documentary access is not a substitute for concurrent access, and vice versa. The right of access encompasses both forms, and both are vitally important.").

inadvertently slipped into the public record in open court is subsequently republished by the court. The court has not indicated that transcripts, for example, will eventually be produced in redacted form before the end of PFC Manning's trial. Even if this were the case, it is reversible error for a court to withhold from the public each and every document filed, subject to further review and disclosure, because such procedures "impermissibly reverse the 'presumption of openness' that characterizes criminal proceedings 'under our system of justice." *Associated Press v. District Court*, 705 F.2d 1143, 1147 (9th Cir. 1983) (quoting *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 (1980)). It is "irrelevant" that some of the pretrial documents might only be withheld under such a scheme for a short time, *id.*, as the loss of First Amendment rights in this context "for even minimal periods of time" constitutes irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (citing *New York Times Co. v. United States*, 403 U.S. 713 (1971)).[11]

For all practical purposes, the military trial court has effectuated a blanket closure order over the proceedings in the *Manning* case. Those few members of the public who are able to visit the courtroom are given access to the open court proceedings, and certain redacted defense filings are available on the internet. But as to the rest of the documents at issue here, a blanket bar on public access has been the rule. Confronted with similarly broad closures lacking specific

---

[11]     The contrast with the degree of public access provided for in the military commissions underway at Guantánamo is striking. Courtroom proceedings at Guantanamo are open to public observers and also available for live viewing domestically via closed circuit television. Transcripts of these courtroom proceedings are posted in a time frame comparable to that provided for high-profile criminal trials in the Article III courts; transcripts of the arraignment of the accused 9/11 conspirators were posted on the public website within hours. Court orders and submissions by the parties are routinely posted in redacted form on the website for the Military Commissions, http://www.mc.mil/, within a maximum of fifteen days even where classification review and redaction occurs, and 24 hours where no classification review takes place. Rules mandating access to orders, transcripts, filings, and other materials are all provided for in the published *Regulation for Trial by Military Commission*. Kadidal Decl. ¶¶ 18-19, A-52-53.

justification on the record, the Court of Military Appeals 35 years ago reversed a court-martial conviction for contact with foreign agents and attempted espionage. *United States v. Grunden*, 2 M.J. 116, 120-21 (C.M.A. 1977) ("the public was excluded from virtually the entire trial as to the espionage charges.... [B]lanket exclusion ... from all or most of a trial, such as in the present case, has not been approved by this Court"); *id*. at 121 ("In excising the public from the trial, the trial judge employed an ax in place of the constitutionally required scalpel."); *see also United States v. Ortiz*, 66 M.J. 334, 342 (C.A.A.F. 2008) (reversing conviction for failure of trial court to engage in process of applying *Press-Enterprise II*; appellate court may not make factual findings justifying closure *post hoc*).

The remedy Plaintiffs request here is far more modest: an order mandating that the trial judge afford notice to the public of any contemplated closures or sealing of documents,[12] allow opportunity for interested parties to be heard, and ultimately justify any restrictions on access by case-by-case specific findings of necessity after consideration of less-restrictive alternatives. Plaintiffs also request that this Court make clear that judicial documents must be made available to the press and public contemporaneously with the proceedings in order for the right of public access to be meaningful. Finally, this Court should state clearly and affirmatively that the right of public access to documents like these – judicial orders, filings, and transcripts – is protected by the First Amendment and therefore subject to the strict First Amendment standards described above.[13] While application of those First Amendment standards can be left to the good offices of

---

[12]    Although redacted defense filings have been made available to the public on the defense firm's website, that access is by the grace of defense counsel. Any order from this Court should mandate that the military trial court make *both* government and defense filings available to the public going forward, subject to the First Amendment standards described herein.

[13]    It appears that Chief Judge Lind's decision-making was affected by the fact that she believes the military appeals courts (*e.g.* the CAAF and the ACCA) have only recognized a limited common law right of access to judicial documents, not a First Amendment right of

the trial judge in the first instance, this Court must enter a clear declaratory order that the First

Amendment applies and that such documents ordinarily should be released to the press and

public without redaction or delay.[14]

---

access. *See* Kadidal Decl. ¶ 9, A-49; Transcript of Oral Ruling at A-174; *see also* Lt. Col. Denise R. Lind, *Media Rights of Access to Proceedings, Information, and Participants in Military Criminal Cases*, 163 Mil. L. Rev. 1, 45-53 (2000).

Moreover, Judge Lind's article and her discussion in court indicate that she believes the FOIA statute provides an adequate alternative mode of access to the documents in question, an argument that was the government's sole response to Plaintiffs' petition in the CAAF. This argument compares apples to oranges. FOIA provides a lesser level of access to court-martial documents than the First Amendment, as federal courts have noted. *See Dayton Newspapers, Inc. v. United States Dep't of the Navy*, 109 F. Supp. 2d 768, 772-73 (S.D. Ohio 1999) ("legal standards governing disclosure are not identical" under FOIA and First Amendment, in large part because FOIA allows numerous statutory exemptions). In the *Dayton Newspapers* case, the court noted that the requested documents – jury questionnaires from a court-martial – would largely have been available under the First Amendment but were properly withheld under FOIA. *Id*. at 775 n.5 ("Because the present case, unlike *Washington Post*, involves a FOIA request, rather than the First Amendment, the Court need not engage in strict-scrutiny review.") There can be no clearer demonstration of the fact that FOIA's built-in legal exemptions from disclosure will typically operate to produce far more restricted access to court records than the First Amendment demands – even putting to one side the fact that the FOIA statute permits delays in production that would not satisfy the contemporaneous access principles demanded by the First Amendment.

Accordingly, no federal court has ever held that FOIA trumps the constitutional right of public access to documents; indeed, quite the opposite: federal courts have held that FOIA allows withholding of documents already disclosed on the public record of courts-martial. *See, e.g*., *Freedberg v. Department of Navy*, 581 F. Supp. 3 (D.D.C. 1982) (Gesell, J.) (allowing withholding of "NIS and JAG Manual investigations" of a murder despite the fact that "large portions" of the same "are already in the public record of the courts-martial" for two of the four murder suspects already tried).

[14]     To the extent that defendants may contend (as they argued in the CAAF) that Judge Lind is not the proper defendant to be named in this mandamus and injunction action because she does not have the authority to direct the release of the public records at issue, ample authority suggests to the contrary. As the presiding military judge she has supervisory power over the records and files of the *Manning* court-martial proceedings, and the inherent authority to direct public release of the records at issue here. *Nixon v. Warner Communications*, 435 U.S. 589, 598 (1978) ("Every court has supervisory power over its own records and files."); *United States v. Chisholm*, 58 M.J. 733, 738 (Army Ct. Crim. App. 2003) ("How a particular military judge 'directs' the completion of a given record is a matter within his or her broad discretion and inherent authority."). Ordering release pursuant to the public's First Amendment rights is equally within the inherent powers of any court, military or federal.

C.      **The Trial Court's Practice of Deciding Substantive Issues within R.C.M. 802 Conferences Is Inconsistent with the Public's Right of Access to The Court-Martial Proceedings**

A number of substantive matters, including the very issue of public access to documents, have been argued and decided by the trial court in off-the-record conferences under Rule 802, held outside of view of the public with no articulated justification for the lack of public access. Kadidal Decl. ¶ 13 & Ex. B, A-50-51. There is, to plaintiffs' knowledge, no recording, transcript, or other record of any of those discussions. Because there is no other way to vindicate the right of public access to those proceedings, the trial court can only remedy the failure to make these past R.C.M. 802 conferences part of the public record by reconstituting all conferences that have already been held in open court. *Cf. United States v. Ortiz*, 66 M.J. 334, 342 (C.A.A.F. 2008) ("an erroneous deprivation of the right to a public trial is structural error, which requires" outcome of proceeding below to be voided "without [appellate court engaging in] a harmlessness analysis."). This Court should order that no further substantive matters be discussed in Rule 802

Moreover, the military judge controls access to the proceedings generally pursuant to R.C.M. 806. R.C.M. 806 should be interpreted in light of U.C.M.J. Article 36 to reach judicial documents. No one doubts that Judge Lind has authority over closure of physical access to the courtroom under R.C.M. 806; in light of the fact that the uniform rule in federal court criminal trials mandates public access to judicial documents, she must have authority under that same rule to make the records sought here available to the public. A military judge no more has authority to throw up her hands and disavow any power to enforce the First Amendment rights of the public than she has to disclaim power to enforce the open trial demands of the Sixth Amendment.

As the dissenting opinion of Judge Cox in the CAAF noted, "[t]he military judge's confusion over what authority she possesses over trial documents is evident from the record" (*cf.* transcript of Judge Lind's order at A-175), but "[w]hen the position of the military judge was created, the intention was that the military judge would preside over a court-martial in the same manner as a federal district judge, with 'roughly equivalent powers and functions.' ... Once a court-martial is convened, the military judge controls its proceedings, subject to the proscriptions in the R.C.M. … The fact of the matter is there is no rule that states that the documents, filings, evidence, and record transcripts created during an ongoing court-martial do not fall under the authority given to the military judge to exercise control over the court-martial and ensure public access to the proceedings." *CCR v. United States*, Slip Op. 3-5, A-351-53. Nothing in the CAAF majority's decision (finding an absence of appellate jurisdiction to correct the trial judge's error), the Rules for Courts-Martial, or Army regulations is to the contrary.

conferences without the military court meeting the requirements of the First Amendment as set forth below.

Rule 802 by its terms contemplates allowing resolution of "routine or administrative matters" in conferences,[15] but allows that substantive matters may be resolved therein by "consent of the parties."[16] However, all "matters agreed upon at a conference shall be included on the record." R.C.M. 802(b) (A-75-76). Despite the clarity of this rule, the trial court has decided substantive matters without promptly memorializing the discussion or the decisions on the record. The use of 802 conferences in this way violates the First Amendment, regardless of whether or not the parties consent, because the public is denied meaningful access to the proceedings. Events last summer before the trial court (memorialized in the Declaration of Alexa O'Brien, a journalist attending the proceedings, A-71-74) illustrate the problematic nature of the military court's use of 802 conferences.

As Ms. O'Brien notes, during the June 6, 2012 Article 39 proceedings, the defense raised a number of objections to the court's R.C.M. 802 practice: (1) the government, it claimed, was relitigating already-decided motions during 802 conferences, (2) the public summary of issues decided in 802 conferences was generally not adequate, and (3) most importantly, the government had been taking positions in 802 conferences and then later taking contradictory positions in open court.[17] O'Brien Decl. ¶ 5, A-72. That latter problem, the defense contended, should be addressed by granting its motion that all 802 conferences in the case be recorded and

---

[15]     Manual for Courts-Martial, Discussion, R.C.M. 802 (A-75-76).

[16]     *Id*.

[17]     Eventually, the government approved for posting on the defense website the Defense Motion to Record and Transcribe All R.C.M. 802 Conferences (2 June 2012), A-77-79. The motion sets forth a few examples of alleged government manipulation of the 802 process. *See id*. at ¶¶ 6-9, A-77-79; *see also id*. at ¶ 10, A-79.

transcribed. *Id.* ¶¶ 5, 4, A-71-72.[18] Judge Lind denied the motion, noting that defense counsel had not objected to the lack of recording previously, and finding that while "matters agreed upon at the conference shall be included [in] the record orally or in writing" normally, "[f]ailure of a party to object ... waives this requirement." *Id.* ¶ 7, A-73. Going forward, Judge Lind decided that "if either party objects to discussion of an issue in an R.C.M. 802 conference, the conference will be terminated" (rather than recording it), and the issue instead addressed at the next Article 39 session on the court's calendar. *Id.*, A-73-74.

Mandating that the substance of 802 conferences be memorialized on the record only when a party objects, as the trial court has done here, is not enough to satisfy the right of public access. The parties cannot be allowed to control the right of the press and public to know and analyze the substance of important aspects of the proceedings. The trial court's order would do nothing to prevent collusive attempts (by the parties acting together) to keep matters off the public record. And it does nothing to prevent the government from continuing to take contradictory positions from those it had taken in past conferences, as has been alleged here, O'Brien Decl. ¶ 5, A-71-72, relying only on the memory of the judge to provide a disincentive against such mischief.

---

[18]     Two somewhat contradictory R.C.M. rules are relevant here. On the one hand, R.C.M. 802(b) states that "conferences need not be made part of the record, but matters agreed on at a conference shall be included in the record orally or in writing. Failure of a party to object at trial to failure to comply with this subsection shall waive this requirement." (A-75.) On the other hand, R.C.M. 1103(b)(2)(B) states that for general courts-martial, "the record of trial shall include a verbatim written transcript of all sessions" except deliberations, and the Discussion note to the rule states that this "verbatim transcript" requirement "includes ... all proceedings including sidebar conferences.... Conferences under R.C.M. 802 need not be recorded, but matters agreed upon at such conferences *must* be included on the record." (Emphasis added.) Once this Court makes clear that the public right of access applies to these proceedings, the precise contours of how detailed the on-the-record summaries of proceedings in a conference must be to satisfy the First Amendment may be best left to the discretion of the military court in the first instance.

The trial court's finding that defense counsel had waived opposition to the court's failure to "includ[e the substance of the 802s in] the record" by failing to object was erroneous, because case law establishes that 802 conferences must be recorded when important substantive matters are addressed.[19] Failure to do so violates not only the verbatim transcript provisions of R.C.M. 1103 but also the Fifth and Sixth Amendment right to public trial, and First Amendment right of the public to be present. *United States v. Walker*, 66 M.J. 721, 749-50, 753-54 (N-M.C.C.A. 2008) ("extensive use" of 802s creates "deep[] concern" under R.C.M. 804, U.C.M.J. Art. 39, and First, Fifth and Sixth Amendments; court overturned death sentence on other grounds, mooting otherwise serious 802 issues).

Moreover, several military service courts of appeal have found the "verbatim transcript" requirement of Rule 1103 to be jurisdictional, and therefore not subject to waiver by a party's failure to object.[20] Reviewing courts have presumed prejudice to a defendant from failure to record the substance of an 802 conference in the appellate record,[21] and have found that the trial

---

[19]    *See United States v. Sadler*, 29 M.J. 370, 373 n.3 (C.M.A. 1990) (instructions not to be discussed at 802s); *United States v. Garcia*, 24 M.J. 518, 519 (A.F.C.M.R. 1987) (802s "not [for] central trial issues"; providency of guilty pleas may not be discussed at 802 conference).

[20]    *See Garcia*, 24 M.J. at 519-20 ("The requirement for a verbatim record, where it exists, is jurisdictional and cannot be waived by counsel's failure to object. *United States v. Whitney,* 23 U.S.C.M.A. 48, 48 C.M.R. 519 (1974); *United States v. Desciscio*, 22 M.J. 684 (A.F.C.M.R. 1986). ... R.C.M. 802 conferences covering authorized subjects are ... an exception. ... However, when matters beyond the scope of the rule have been discussed in an R.C.M. 802 conference, subsequent failure to include them in the record may render it nonverbatim."); *Walker*, 66 M.J. at 754-55 ("extensive use" of 802s, including those where there was "a ruling by the judge affecting rights," "is jurisdictional and cannot be waived by failure to object at trial." (citing *United States v. Henry*, 53 M.J. 108, 110 (C.A.A.F. 2000))).

[21]    *See United States v. Adriance*, 1988 CMR LEXIS 222, at *6 (A.F.C.M.R. Mar. 4, 1988); *Desciscio*, 22 M.J. at 686.

judge has an independent obligation to record.[22] Other service courts have strongly castigated a trial court's practice of frequent resort to 802 conferences, and noted that the use of the 802 process to "litigate issues" or decide contested issues is outside the intent of the drafters of the rules. *See Walker*, 66 M.J. at 756 ("we roundly condemn the [802] practice employed by the military judge in this case"); *see also id.* at 752 ("To litigate issues, or to decide issues not subject to agreement between the parties, 'would exceed, and hence be contrary to, the authority established under [UCMJ] Article 39(a)' for such conferences," citing "R.C.M. 802(a), Drafter's Analysis"); *Grey*, 1997 CCA LEXIS 198, at *16 ("military judge should have summarized ... the nature of the conference.... It was error not to").

As evidenced by these many cases, the military courts have long suffered from a widespread practice of using 802 conferences to argue and pre-decide troublesome issues outside of public view. If current trends continue, nearly all important issues in high profile court-martial proceedings will be rehearsed, argued and decided behind closed doors, and afterwards presented in the most summary fashion – if at all – to the public. It is said that the ad hoc nature of military trial courts, each of which is convened only for the purpose of trying a single case, tends to sap participants (including military judges) of the confidence born of continuity of practice, which in turn fosters the practice of dress-rehearsing issues outside of public scrutiny in 802 conferences. While the aim of such a policy may be to enhance the appearance of professionalism of the military courts, it is a short-sighted means to that end, for by allowing decision-making to be withdrawn from public view, it will in the long run erode public confidence in the ability of military courts to deliver fair and impartial justice.

---

[22]     *See Desciscio*, 22 M.J. at 688 ("trial judges must protect the accused's right to a complete record whenever they rule on objections or motions"); *United States v. Grey*, 1997 CCA LEXIS 198, at *18 (N-M.C.C.A. Jun. 20, 1997) ("the military judge and the trial counsel each had an independent obligation to ensure that the R.C.M. 802 session was summarized on-the-record").

At a bare minimum, the First Amendment mandates that for any matters decided in closed 802 conferences, either (a) the discussions in the conference be recorded, or (b) the substance of the arguments and the discussion with the trial court be memorialized on the public record with sufficient detail to allow for a degree of public scrutiny of the conduct of the parties and the court's decision-making sufficient to serve the underlying purposes of First Amendment access – regardless of whether both parties are content to waive the memorialization requirement. Such a practice would be faithful to both the First Amendment and the letter of Rules for Courts-Martial 802 (leaving aside its waiver clause) and 1103.

## D.      Plaintiffs Have Standing

CCR requested relief on behalf of itself and several of the other plaintiffs here[23] from the trial court and was denied. Plaintiffs then exhausted all possibility of relief from the military courts of appeals by first bringing their claims there. (Since those courts eventually ruled they lacked jurisdiction, such exhaustion was unnecessary in retrospect.) Plaintiffs clearly have standing to pursue their First Amendment and common law claims for access to judicial documents under existing Supreme Court precedent. The Supreme Court has repeatedly recognized the standing of media plaintiffs seeking access to criminal proceedings in the *Richmond Newspapers* line of cases. In all four of those cases, media petitioners requested access in the trial court and were denied; they then sought extraordinary relief from superior courts. The Supreme Court never questioned the standing of petitioners in any of these cases, despite the fact

---

[23]      Several current plaintiffs did not request relief in CCR's original missive to the trial court on April 23, 2012, but as to their standing, it obviously would have been futile for them to make the same request after CCR and the other media parties mentioned in the letter (A-60) had been denied relief.

         As noted below, at part III.F, several plaintiffs here have specifically documented the harm they have suffered as a result of the trial court's ruling. Those documented harms are a further basis for recognizing standing of the media plaintiffs who have sought to cover the proceedings in open court.

that standing is jurisdictional and any federal court is obliged to assure itself that it exists.[24]

Equally relevant are the many cases in the Courts of Appeals recognizing standing for plaintiffs

in the access-to-documents cases cited above.

There is no distinction between the standing of members of the public and the standing of

members of the traditional professional media. The Supreme Court has recognized that nearly

any member of the public can establish standing to challenge a denial of access to information

the public is entitled to receive. In *FEC v. Akins*, 524 U.S. 11 (1998), plaintiffs, six individual

members of the voting public, claimed that a federal statute (the reporting requirements for

political action committees) created a right to information (to the information the lobbying group

AIPAC needed to file, on plaintiffs' view), and denial of this right created concrete injury:

> The 'injury in fact' that respondents have suffered consists of their inability to obtain information … that, on respondents' view of the law, the statute requires that AIPAC make public. There is no reason to doubt their claim that the information would help them (and others to whom they would communicate it) to evaluate candidates for public office, especially candidates who received assistance from AIPAC, and to evaluate the role that AIPAC's financial assistance might play in a specific election. Respondents' injury consequently seems concrete and particular. Indeed, this Court has previously held that a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute.

---

[24]     *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 560, 562-63 (1980) (not questioning standing, despite fact that media petitioners did not object to exclusion at very outset of dispute; issue not moot despite release of transcripts after end of trial, because "capable of repetition, yet evading review"); *Globe Newspapers Co. v. Sup. Ct.*, 457 U.S. 596, 599 n.4 (1982) (not questioning standing of media petitioners, who had initially moved to revoke closure order in trial court, and subsequently sought extraordinary relief in state courts, and similarly finding case not moot); *Press-Enterprise Co. v. Sup. Ct. of Cal. [Press-Enterprise I]*, 464 U.S. 501, 504-05 (1984) (not questioning standing of media petitioners who had initially moved trial court for access, been denied, and sought writ of mandate); *Press-Enterprise Co. v. Sup. Ct. [Press-Enterprise II]*, 478 U.S. 1, 3-6 (1986) (not questioning standing of media petitioners who requested release of transcripts at close of pretrial hearing and were denied, then sought extraordinary relief).

*Akins*, 524 U.S. at 21 (citing cases). Similarly, plaintiffs here have suffered injury because they were denied access to information that must be publicly disclosed by operation of the First Amendment. That sort of injury is no different, as the *Akins* court noted, from mass-tort or voting rights cases where a common injury is shared by many. *See, e.g.*, *Shaw v. Hunt*, 517 U.S. 899, 904 (1996) ("a plaintiff who resides in a district which is the subject of a racial gerrymander claim has standing to challenge the legislation which created that district"). As the Supreme Court has repeatedly noted over the years, that an injury is widely shared does not mean it cannot underlie standing. *See Akins*, 524 U.S. at 24 ("where a harm is concrete, though widely shared, the Court has found injury in fact."); *United States v. SCRAP*, 412 U.S. 669, 686-88 (1973); *Public Citizen v. United States Dep't of Justice*, 491 U.S. 440, 449-50 (1989).

**E.      Relief Is Available Directly under the First Amendment**

Members of the press and public may bring actions for injunctive relief directly under the First Amendment. It has long been established that plaintiffs may bring injunctive actions against federal officials for violations of constitutional rights.  *See, e.g.*, *Bell v. Hood*, 327 U.S. 678, 684 (1946) (Supreme Court has long "sustain[ed] the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution"); *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949); *Schneider v. Smith*, 390 U.S. 17 (1968); *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 404 (1971) (Harlan, J., concurring) (noting "presumed availability of federal equitable relief against threatened invasions of constitutional interests"); *R.I. Dep't of Envtl. Mgmt. v. United States*, 304 F.3d 31, 41 (1st Cir. 2002) ("our courts have long recognized that federal officers may be sued in their official capacity for prospective injunctive relief to prevent ongoing or future infringements of federal rights.... Such actions are based on the grant of general federal-question jurisdiction

under 28 U.S.C. § 1331 and the inherent equity powers of the federal courts."); Erwin Chemerinsky, *Federal Jurisdiction* § 9.1.1, at 632 (6th ed. 2012) ("[T]he Supreme Court long has held that federal officers may be sued for injunctive relief to prevent future infringements of federal laws."); Richard H. Fallon, Jr. *et al., Hart and Wechsler's The Federal Courts and the Federal System* 284 (6th ed. 2009) ("The principle that the Constitution creates a cause of action against governmental officials for injunctive relief ... has been easily absorbed in suits challenging *federal* official action.").

Federal courts have also issued injunctive relief directly under the First Amendment to force disclosure of documents from state courts. *See, e.g*., *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 499 (1st Cir. 1989); *Courthouse News Svc. v. Jackson*, 38 Media L. Rep. 1894, 2010 U.S. Dist. LEXIS 74571 (S.D. Tex. Feb. 26, 2010) (entering consent injunction allowing access to county court case-initiating documents). There also is precedent for injunctive relief under the First Amendment mandating access to proceedings in Article I courts, such as the court-martial at issue here. *See, e.g*., *Detroit Free Press v. Ashcroft*, 303 F.3d 681 (6th Cir. 2002) (mandating public access to immigration court proceedings under First Amendment).

Of course, until the recent decision of the CAAF holding that no appellate jurisdiction, by virtue of the All Writs Act, existed over media and public petitioners' claims for public access to the *Manning* proceedings, there would have been no need for media petitioners to seek access to court-martial proceedings outside of the military court system. *Cf. ABC v. Powell*, 47 M.J. 363 (C.A.A.F. 1997) (extraordinary relief granted to allow media petitioners access to probable cause hearing for Sgt. Gene McKinney). In the wake of the CAAF's decision, however, these plaintiffs have no alternative but to seek to enforce and vindicate their First Amendment rights and the public's right of access to *Manning* court documents through a direct action in this Court.

37

Serious constitutional issues would arise if relief in this court were unavailable, leaving no judicial forum for vindication of the violations of fundamental constitutional rights at issue here. *Cf. Webster v. Doe*, 486 U.S. 592, 603 (1988); *Bowen v. Michigan Academy of Family Physicians*, 476 U. S. 667, 681 n.12 (1986).

## F.     Plaintiffs Have Met the Requirements for a Preliminary Injunction

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). As the Supreme Court has repeatedly held, even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality); *see also N.Y. Times v. United States*, 403 U.S. 713, 715 (1971) (Black, J., concurring). The fact that the First Amendment recognizes a right of contemporaneous access to judicial proceedings and documents generated therein is simply more proof of this principle. Every moment that the press and public are denied access to information they are entitled to about the functioning of organs of their government constitutes irreparable harm.

Even putting aside the presumption of harm that applies in public access cases, the declarations from the record of the CAAF litigation (which are attached to this motion) demonstrate very specific forms of harm that the media and public have suffered in attempting to cover and understand the *Manning* proceedings. *See* Kadidal Decl. at ¶ 15 (at open-court Apr. 24 pretrial hearing, "it was extremely difficult to follow what was being discussed and/or decided during the hearing without having had an opportunity to read the Court's prior orders or the government's filings."); Letter from Michael Ratner to the court-martial (Mar. 21, 2012), A-57

(stating that he "attended the motions hearing on March 15, 2012, and ... it was not possible to understand fully or adequately the issues being litigated because the motions and response thereto were not available."); Letter of Reporters Committee for Press Freedom to Jeh Johnson, General Counsel, Department of Defense (Mar. 12, 2012) at 2, A-65 ("journalists covering the [*Manning*] proceeding are often unaware of what is being discussed therein" because of lack of access to documents); Decl. of Kevin Gosztola ¶¶ 5-9, A-69-70 (May 23, 2012) (detailing hardship for journalists attempting to cover proceedings); Decl. of Ed Pilkington ¶¶ 13-24, 27-30, A-310-14, A-316-17 (same); Supp. Decl. of Kevin Gosztola ¶¶ 2-6, 16, A-324-26, A-329 (same).

The government has to this point in this yearlong litigation offered no argument that there will be any harm whatsoever to the government's interests or to the public interest if the relief plaintiffs seek is granted. The benefit to the public interest from increased transparency in these court-martial proceedings should be as obvious as the benefit to the perceived legitimacy of the proceedings themselves. "When a party seeks a preliminary injunction on the basis of the potential violation of the First Amendment, [therefore,] the likelihood of success on the merits often will be the determinative factor." *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998). On the law, plaintiffs have clearly established their likelihood of success.

## G.      This Court Has Power to Issue Mandamus Relief Pursuant to 28 U.S.C. § 1361

28 U.S.C. § 1361 provides that "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."[25] That description applies to the military

---

[25]      The jurisdictional issue decided by the CAAF was far different. Petitioners in the CAAF sought mandamus under the All Writs Act, which is expressly not an independent source of

officials who are defendants here. *See, e.g.*, *Melvin v. Laird*, 365 F. Supp. 511, 520-21 (E.D.N.Y. 1973) (Weinstein, J.) (finding mandamus jurisdiction available under § 1361, but rejecting plaintiff's constitutional challenges to his court-martial conviction); *id.* at 515 ("As defendants acknowledge, persuasive authority supports the proposition that the courts will not shut the judicial door on one who alleges he has been deprived of a constitutional right by the military justice system."); *id.* at 515-16 (citing numerous federal court precedents for § 1361 mandamus review of court-martial proceedings after board of review denials); *see also Baker v. Schlesinger*, 523 F.2d 1031, 1035 (6th Cir. 1975) (holding that "district court had jurisdiction under 28 U.S.C. Sec. 1361 to entertain the action for mandamus," but denying merits relief, in challenge to Army Board for the Correction of Military Records' failure to reverse court-martial conviction for ineffective assistance of counsel).

The action of Judge Lind challenged here is her failure to find, as a matter of law, (a) that the right of public access under the First Amendment, common law, and R.C.M. 806 applies to the documents sought by plaintiffs, and (b) that the public has an independent right of access to conferences under R.C.M. 802 that cannot be waived by the parties. Judge Lind's error in determining that the First Amendment does not apply to the records of military courts formed the predicate for her failure to recognize the right of public access that plaintiff seeks to advance through this proceeding.  This court clearly has the power to declare the plaintiffs' rights under the First Amendment, and to direct by way of mandamus that the military courts must acknowledge those rights and conduct themselves in accord with controlling First Amendment

---

jurisdiction. They therefore had to establish that the issue of public access might reach the CAAF at a later time on direct appeal under its ordinary jurisdictional statute, in a case in which the defendant had not joined in the request for greater public access to the proceedings.

principles. This Court is empowered to grant preliminary injunctive relief in advance of a final

ruling issuing the writ.[26]

## IV. CONCLUSION

As the Court of Appeals for the Second Circuit explained recently in the context of a

high-profile terrorism case:

> Transparency is pivotal to public perception of the judiciary's legitimacy and
> independence. The political branches of government claim legitimacy by election,
> judges by reason. Any step that withdraws an element of the judicial process from
> public view makes the ensuing decision look more like fiat and requires rigorous
> justification.

*United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008) (quotation and citation omitted). The

legitimating function of openness is as important as its role in making proceedings more likely to

arrive at accurate outcomes. Both considerations are vital in a case with so high a public profile

as this one, and the concerns raised by the secrecy imposed thus far are magnified by the fact that

they are taking place in a military proceeding. *See* Eugene R. Fidell, *Accountability,*

*Transparency & Public Confidence in the Administration of Military Justice*, 9 Green Bag 2d

---

[26]     The Fourth Circuit has held that district courts have the authority to issue preliminary
injunctive relief on mandamus claims arising under § 1361. *See Starnes v. Schweiker*, 715 F.2d
134, 142 (4th Cir. 1983) ("Even if jurisdiction rests solely on § 1361, we think that the grant of
interim injunctive relief was proper. Mandamus jurisdiction under § 1361 permits flexible
remedies, including injunctive or declaratory relief," citing *Crawford v. Cushman*, 531 F.2d
1114, 1126 (2d Cir. 1976) and *Burnett, infra*), *vacated on other grounds sub nom. Heckler v.
Starnes*, 467 U.S. 1223 (1984); *see also Burnett v. Tolson*, 474 F.2d 877, 883 n.10, 883 (4th Cir.
1973) (in case where circuit has "doubt that there is jurisdiction under 28 U.S.C. § 1331" "there
is jurisdiction in the District Court under 28 U.S.C. § 1361 to try the case and to thereupon
consider whether or not the plaintiffs may be entitled to a Writ of Mandamus, or an injunction, or
a declaratory judgment" because "[m]andamus jurisdiction under 28 U.S.C. § 1361 permits
flexibility in remedy"); *Earls v. Resor*, 327 F. Supp. 354, 358, 363 (S.D.N.Y. 1970) (in § 1361
action "to review actions by military authorities to determine whether they have followed their
own established regulations," district court granted preliminary injunction to "stay ... plaintiff's
[military] activation"); *Harlem Valley Transp. Ass'n v. Stafford*, 360 F. Supp. 1057, 1059
(S.D.N.Y. 1973) (in action held only to be jurisdictionally "properly here at least" under § 1361,
granting preliminary injunction ordering ICC to determine whether environmental impact
statement was required).

361 (2006) (openness is particularly vital in courts-martial because "military trial courts in our country are not standing or permanent courts," and may be convened by various commanding officers without any centralized oversight at the trial stage).

Plaintiffs have clearly established their entitlement to relief on the merits, irreparable harm, and that the balance of interests favors the preliminary injunctive relief they seek and that the relief will serve the public interest. This Court should declare that the First Amendment and common law rights of access apply to the documents plaintiff seek, and order that any restrictions on public access be allowed only after a case-by-case specific showing that a compelling government interest justifies the restrictions and no less-restrictive alternatives are available. Any such restrictions may be imposed only after notice that allows public participation in the decision-making and creation of a record that allows subsequent review by superior courts. Individual documents already generated or filed in the court-martial may only be withheld from public release if the government expeditiously provides such notice in the trial court and can make a document-specific showing to the court-martial that meets the requirements of strict scrutiny. Going forward, this Court should order that the court-martial make available to the public copies of documents in a timely manner, contemporaneous with the proceedings to which the documents relate.

This Court should also declare that the First Amendment and common law rights of public access apply to the off-the-record conferences held pursuant to R.C.M. 802, and order the defendants to disclose on the public record the arguments advanced by the parties and the rulings made by the court-martial in any such conferences in sufficient detail to satisfy those rights, or alternatively to reconstitute past R.C.M. 802 conferences in open court.

Where there is a compelling showing by the government that there is a need for redaction or non-disclosure with respect to specific documents or proceedings, the application of the First Amendment standards to such documents and 802 conferences is best left to the good offices of Judge Lind in the first instance.  But given what has transpired to date in the *Manning* proceedings,  this Court should also retain jurisdiction throughout the trial in order to ensure that plaintiffs' constitutional and common law rights of access (which have been denied for well over a year) are remedied forthwith and that this Court's rulings are implemented with appropriate dispatch.

Respectfully submitted,

_____/s/ William J. Murphy_____
William J. Murphy, Bar No. 00497
John J. Connolly, Bar No. 09537
ZUCKERMAN SPAEDER LLP
100 East Pratt St., Ste. 2440
Baltimore, MD 21202-1031
wmurphy@zuckerman.com
Tel: (410) 949-1146
Fax: (410) 659-0436

Shayana D. Kadidal
J. Wells Dixon
Baher Azmy, Legal Director
Michael Ratner, President Emeritus
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
kadidal@ccrjustice.org
Tel: (212) 614-6438
Fax: (212) 614-6499

Jonathan Hafetz
169 Hicks Street
Brooklyn, NY 11201
Tel: (917) 355-6896

*Counsel for Plaintiffs*

Dated: May 22, 2013

43

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Memorandum in Support of Preliminary Injunction, together with its Appendix, with the Clerk of the Court for the United States District Court for the District of Maryland by using the CM/ECF system on May 22, 2013.

Paper copies of the motion and a CD of the Appendix were sent on the same day by overnight courier to the following:

> Colonel Denise R. Lind
> Chief Judge, 1st Judicial Circuit
> U.S. Army Trial Judiciary
> U.S. Army Military District of Washington
> Office of the Staff Judge Advocate
> 103 Third Avenue, SW, Suite 100
> Fort McNair, DC 20319
>
> Maj. Gen. Michael S. Linnington
> U.S. Army Military District of Washington
> Office of the Staff Judge Advocate
> 103 Third Ave. S.W., Suite 100
> Ft. McNair, DC 20319
>
> Lt. Gen. Dana K. Chipman
> U.S. Army Judge Advocate General
> 2200 Army Pentagon
> Washington, DC 20310-2200
>
> Charles T. Hagel
> Secretary of Defense
> 1000 Defense Pentagon
> Washington, DC 20301-1000
>
> Maj. Wayne H. Williams
> Cpt. Rachel A. Landsee
> Office of the Judge Advocate General, United States Army
> U.S. Army Litigation Division
> 9275 Gunston Road
> Fort Belvoir, VA 22060
> wayne.h.williams.mil@mail.mil

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

_____/s/ John J. Connolly_____
John J. Connolly
*Attorney for Plaintiffs*