IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CENTER FOR CONSTITUTIONAL RIGHTS, et al., | ) ) | |
| Plaintiffs, | ) ) | |
| | ) | Civil Action No. 1:13-cv-1504-ELH |
| v. | ) ) | |
| CHIEF JUDGE COL. DENISE LIND, et al., | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ........................................................................................................5

I.      THE MANNING COURT-MARTIAL ...........................................................5

II.     PLAINTIFFS' REQUEST FOR COURT-MARTIAL RECORDS...................6

III.    THE ARMY'S RELEASE OF THE MANNING COURT-MARTIAL RECORDS..........7

IV.     THE NATURE OF COURTS-MARTIAL ......................................................8

ARGUMENT ...........................................................................................................11

I.      THE COURT SHOULD NOT EXERCISE JURISDICTION OVER
        PLAINTIFFS' CLAIMS PURSUANT TO PRINCIPLES OF
        CONSTITUTIONAL AND PRUDENTIAL MOOTNESS, AND DUE TO THE
        DEFERENCE OWED TO A COORDINATE
        MILITARY COURT ....................................................................................11

        A.      Constitutional Mootness .....................................................................12

        B.      Prudential Mootness............................................................................14

        C.      The Deference Owed to the Military Courts Strongly Counsels
                This Court Not to Exercise Equitable Jurisdiction Over Plaintiffs'
                Claims .................................................................................................17

II.     PLAINTIFFS CANNOT SATISFY THE REQUIREMENTS FOR THE
        ISSUANCE OF PRELIMINARY INJUNCTIVE OR DECLARATORY
        RELIEF ....................................................................................................23

        A.      Plaintiffs Cannot Demonstrate Irreparable Harm ................................24

        B.      The Balance of the Hardships Favors Denial of Plaintiffs'
                Requested Relief ................................................................................26

        C.      Plaintiffs Cannot Demonstrate A Likelihood Of Success On
                The Merits ..........................................................................................27

                1.      Court Orders and Filings by the Parties...................................28

i

        2.       Transcripts of Public Proceedings ............................................................31

        3.       Rule 802 Proceedings .................................................................................33

    D.     Issuance of the Relief Plaintiffs Seek Will Not Serve the Public's
         Interests ...............................................................................................................34

CONCLUSION....................................................................................................................35

## PRELIMINARY STATEMENT

This Court should deny plaintiffs the extraordinary preliminary relief they seek. Members of the public, including plaintiffs, have had and will continue to have access to the court-martial proceedings involving Private First Class Bradley E. Manning.  Accordingly, neither the First Amendment nor the common law rights of access to records justifies this Court's ongoing supervision of the court-martial proceedings occurring at Fort Meade, Maryland.

Plaintiffs' chief complaint is that they were denied access to the pre-trial records that have been submitted to date in the Manning court-martial.  By June 5, 2013, however, the Army had made these documents publicly available by placing them on the Army's website.  The relatively few documents excluded from this public disclosure are, in the main, classified documents to which the public has no right of access.  *See* Declaration of Lieutenant Colonel Nelson Van Eck ¶ 14, n.13.  The public documents have been released in their entirety, with only limited redactions to comply with orders of the military court or to protect against the disclosure of classified information or sensitive information such as social security numbers.  *See id*.

In addition, in order to accommodate the unique public interest in the Manning court-martial, there are procedures in place to assure public access going forward.  The Manning court-martial proceedings themselves are open to the public, including to plaintiffs.  Moreover, future filings will be presented on the Army website on an expedited basis, normally within one to two business days, and the public will be informed of – and given the opportunity to contest – the categories and nature of any information that might be redacted from the Manning court-martial records.  In addition, the presiding judge of the military court-martial, Judge Colonel Denise

Lind, has permitted the presence of private stenographers to transcribe open sessions of the court-martial proceedings.

Against this backdrop, plaintiffs cannot prevail on their request for preliminary relief. Plaintiffs face at the outset a high bar.  Like state courts, military courts are not subordinate to federal courts, and the Supreme Court has made clear that the considerations of comity that largely preclude equitable intervention in pending state court criminal proceedings likewise limit intervention in pending court-martial proceedings.  *Schlesinger v. Councilman*, 420 U.S. 738 (1975).  Pursuant to these principles, a federal court's collateral control of the procedures and conduct of court-martial proceedings in a military court can be justified only upon a showing of extraordinary circumstances.  Mere error is not nearly enough; rather, plaintiffs must show a fundamental defect in the proceedings, and deference is owed to the procedures put in place by the military to provide public access.

No such extraordinary circumstances are present here.  As a result of the actions of the Army and Judge Lind, plaintiffs now have access to the vast majority of pre-trial records they sought and the public will have access to the trial and trial records going forward.  Plaintiffs' claims have thus been rendered largely moot, and a substantial question exists whether plaintiffs can meet the minimum constitutional requirements to invoke this Court's Article III jurisdiction with respect to several of their claims for records.

Moreover, even if not constitutionally moot, these same considerations counsel this Court to exercise its undisputed discretionary power to withhold injunctive and declaratory relief with respect to records already (or to be) provided.  Indeed, the reasons for exercising discretion here are compelling.  The Army's recent actions taken to ensure public access to the Manning court-martial records have overtaken plaintiffs' claims with respect to such records and have provided

them effective relief.  Because the public is assured access to the Manning court-martial proceedings and records, there is every reason for this Court to hesitate to decide the sensitive and difficult constitutional questions of first impression that could have wide-ranging implications for courts-martial.  And such caution is particularly warranted here, where plaintiffs ask this Court to decide such questions on the run, within the very compressed time permitted to review plaintiffs' request for preliminary relief.  The Court thus has no need to reach the merits of plaintiffs' request for extraordinary relief with respect to records made (or to be made) publicly available.

In any event, plaintiffs' request for relief fails under the familiar four-part test governing the issuance of a preliminary injunction.  At the outset, plaintiffs have an especially high burden because they do not seek to maintain the status quo but rather ask the Court to issue mandatory, final relief that would effectively end this case, as it would provide the very relief plaintiffs seek in their Complaint.  Such relief is strongly disfavored and can issue only in the most extraordinary circumstances which are not present here.

First, because the Army has taken actions to make publicly available the Manning court-martial records both retroactively and prospectively, plaintiffs cannot demonstrate irreparable injury.  The public has meaningful opportunity to observe the Manning court-martial consistent with common law and First Amendment principles.  Any harm that plaintiffs might complain of regarding the procedures the Army has put in place would be at the margin or, looking forward, purely speculative.  The absence of irreparable injury is sufficient alone to require the denial of plaintiffs' request for relief.

Second, because of the speculative nature of plaintiffs' injury, the balance of equities weighs strongly against relief.  Plaintiffs ask this Court to intrude on ongoing court-martial

proceedings that will require the presiding military judge's full attention.  Without question, this Court's intervention in these critically important proceedings would be disruptive.  In the absence of substantial injury to the public's right of access, intervention would be contrary to the interest of the United States and to the public's interest.

Third, plaintiffs cannot show a likelihood of prevailing on the merits.  Plaintiffs' broad constitutional attacks fall short.  For example, their contention that the military court has effectuated a blanket closure order over the Manning court-martial is without merit in light of the actions of the Army and the presiding judge that ensure public access to the Manning court-martial proceedings and the relevant records.  Also, plaintiffs' suggestion that the public has a categorical First Amendment right to all court-martial records is wrong as a matter of law; questions of public access to court records entail multiple factors that must be considered on a document-by-document basis.  Plaintiffs, accordingly, cannot demonstrate that they have rights of access to any record that may be made part of the Manning court-martial in the future, and certainly cannot justify issuance of an order by this Court declaring them to have such rights.

Plaintiffs' more specific challenges are likewise without merit.  For example, plaintiffs challenge the military court's conduct of off-the-record conferences with counsel under Rule for Courts-Martial 802.  But those conferences are similar in almost all respects to the off-the-record conferences that are held routinely by United States district courts in both criminal and civil proceedings.  Plaintiffs cannot cite any authority to support their contention that they should be given public access to such conferences, which would defeat their very purpose.  Similarly without merit is plaintiffs' claim of constitutional entitlement to trial transcripts of the Manning court-martial.  As noted, that claim is largely moot for ongoing proceedings in light of the decision by the military judge to allow the use of private stenographers to prepare trial

transcripts.  And to the extent plaintiffs seek to compel the Army to first create and then

distribute transcripts of *pre-trial* proceedings, plaintiffs' claims must fail because plaintiffs

cannot demonstrate that they have a constitutional right to compel the Army to prepare, at

government expense, transcripts that do not yet exist.

 For all of these reasons, plaintiffs' request for extraordinary relief should be denied.

## BACKGROUND

## I. THE MANNING COURT-MARTIAL

 On March 1, 2011, the U.S. Army accused Private First Class Bradley E. Manning of

giving various documents, including databases containing hundreds of thousands of government

records, and dozens of classified Department of State cables, to a party that was not authorized to

receive them.  App'x to Pls.' Mot. for Prelim. Injunction ("App'x") (ECF No. 2-2) A-080-87.

He was charged with twenty-two violations of the Uniform Code of Military Justice (UCMJ),

including charges "that he provided intelligence to the enemy" and that he "provided national

security information to a person not entitled to receive it."  *Ctr. for Constitutional Rights v.

United States*, 72 M.J. 126, 127 (C.A.A.F. 2013).  On February 3, 2012, the convening authority

referred the charges to a general court-martial, and on February 23, 2012, PFC Manning was

arraigned before a military judge.  Colonel Denise Lind was assigned to preside over the court-

martial, and began holding pretrial proceedings in open court pursuant to Article 39(a) of the

UCMJ in March 2012.

 On February 28, 2013, PFC Manning pleaded guilty to ten of the twenty-two charges

against him.  Twelve counts remain to be tried.  The court-martial trial on the remaining counts

commenced on Monday, June 3, 2013.

## II.        PLAINTIFFS' REQUEST FOR COURT-MARTIAL RECORDS

The court-martial of PFC Manning garnered widespread attention in the United States and abroad, and numerous media outlets have covered the case.  On March 21, 2012, Plaintiff Center for Constitutional Rights ("CCR"), on behalf of Plaintiffs Julian Assange and Wikileaks ITC, Inc. (Wikileaks), wrote a letter to Judge Lind seeking access to documents filed in the case and transcripts of proceedings, and further requesting that Judge Lind hold conferences conducted under R.C.M. 802 in open court to the extent they concerned substantive matters, and to "reconstitute" in open court past such conferences.  App'x A-056-58.  On April 23, 2012, CCR, again on behalf of Assange and Wikileaks, wrote a letter to counsel for PFC Manning, explaining its request and asking for an opportunity to address the court about it.  *Id.* A-060-62.

On April 24, 2012, Judge Lind held a public hearing on various matters, including CCR's requests for access.  The court acknowledged the two letters from CCR, explained that it was interpreting them as a request for intervention, and denied the request.  *Id.* A-172-73.  The court noted its duty to guarantee "the 1st Amendment Right to a public trial," and explained that the "proceedings have been open and will remain open to the maximum extent," with the possibility of some future "closed proceedings for classified information."  *Id.* A-173; *see also id.* A-174 (explaining that the "proceedings have remained open thus far" pursuant to R.C.M. 806(c), which provides the "standard for closure of trials in the military").  Although recognizing the public's common law right of access to judicial documents, Judge Lind indicated her belief that the First Amendment did not mandate public access to exhibits admitted during a court-martial.  *Id.* A-175.  Judge Lind explained, however, that, "[c]onstitutional interpretation aside," she was not "the custodian of exhibits in the case," and that "[r]equests for access to exhibits in this case should be directed to the appropriate records custodian, " indicating that the Freedom of

6

Information Act ("FOIA") was appropriate means by which the public could obtain court-martial records. *Id.*

On May 23, 2012, the plaintiffs in this case sought relief from Judge Lind's order in the Army Court of Criminal Appeals. App'x A-001. Unsuccessful there, plaintiffs filed a petition to the U.S. Court of Appeals for the Armed Forces (CAAF), seeking the same relief they had originally asked of Judge Lind. On April 16, 2013, CAAF dismissed the writ-appeal, holding that it lacked jurisdiction to grant the requested relief. *Ctr. for Constitutional Rights*, 72 M.J. at 127.

## III.  THE ARMY'S RELEASE OF THE MANNING COURT-MARTIAL RECORDS

During the pendency of these proceedings, numerous entities had filed FOIA requests seeking Manning court-martial records. S*ee, e.g.*, App'x A-140.  In significant contrast to Article III courts, courts-martial are subject to FOIA, 5 U.S.C. §§ 551-52.  The Judge Advocate General, as the Army official authorized to act on requests for records relating to courts-martial, has delegated authority over documents requested while a court-martial is ongoing to the Office of the Judge Advocate General ("OTJAG"), Criminal Law Division.  Van Eck Decl. ¶¶ 12-13.

On February 27, 2013, in partial response to the FOIA requests received for Manning court-martial records, OTJAG publicly released 84 of the approximately 564 pre-trial documents. *See id.* ¶ 13.  An additional 431 pre-trial documents were then made publicly accessible this week. *See id.* ¶ 14.  These records comprise the entire body of records and exhibits that had been filed in the Manning court-martial in pre-trial proceedings, excepting primarily classified documents. *See id.* ¶ 14, n.13.  The publicly-released documents contain limited redactions, including redactions designed to protect against the disclosure of personal information, such as social security numbers, law enforcement information, classified

information, and information subject to a protective order in the ongoing court-martial.  *See id*. ¶ 14.  Due to the public's interest in these records they were posted on the Army's electronic FOIA reading room.  *See id*.

In light of the significant public interest in this case, the Army has additionally implemented procedures by which the public will continue to have access via the Army's electronic FOIA reading room to Manning court-martial records going forward during the length of the proceeding.  *See id*. ¶¶ 15-17.  Pursuant to these procedures, records will be made available on an expedited basis, with the goal of making the records public within one to two business days after filing.  *See id*. ¶ 15.  In contrast to Article III courts, records are made part of court-martial proceedings without first redacting sensitive, sometimes classified information.  *See id*. ¶ 6.  The Army consequently requires this short period of time to review records before making them publicly accessible.  *See id*. ¶ 16.  The Army will additionally provide an expedited process for appellate review, allowing any interested party the opportunity to challenge any redactions made of court-martial records.  *See id*. ¶ 17.

## IV.    THE NATURE OF COURTS-MARTIAL

The Constitution grants to Congress and Congress alone the "authority 'to make Rules for the Government and Regulation of the land and naval Forces.'"  *United States v. Joshua*, 607 F.3d 379, 383 (4th Cir. 2010) (quoting U.S. Const. art. I, § 8, cl. 14).  Congress therefore has "plenary control over rights, duties, and responsibilities in the framework of the Military Establishment, including regulations, procedures, and remedies related to military discipline."  *Id.* (quoting *Weiss v. United States*, 510 U.S. 163, 177 (1994)).  With this authority, Congress has established "a comprehensive internal system of justice to regulate military life," *United States v. Stanley*, 483 U.S. 669, 679 (1987) (quotation marks and citation omitted), one that is "markedly

8

different" from its civilian counterpart, *Joshua*, 607 F.3d at 383.  Each feature of the system

Congress has put in place "tak[es] into account the special patterns that define the military

structure."  *Stanley*, 483 U.S. at 679.

In contrast to civilian courts, courts-martial are not "independent instruments of justice,"

*Williams v. Sec'y of Navy*, 787 F.2d 552, 561 (Fed. Cir. 1986); the "trial of soldiers to maintain

discipline is merely incidental to [the military's] primary fighting function," *Middendorf v.*

*Henry*, 425 U.S. 25, 46 (1976).  Courts-martial, therefore, are designed to be convened quickly,

and in far-flung locales.  *See, e.g.*, *Wade v. Hunter*, 336 U.S. 684, 686 (1949) (noting that

soldiers "had advanced about 22 miles farther into Germany to a place called Pfalzfeld," where a

court-martial was convened); *Ex parte Reed*, 100 U.S. 13, 20 (1879) (considering "a general

court-martial . . . on board the United States ship 'Essex,' then stationed at Rio Janeiro, in

Brazil").  This flexibility allows the military to maintain discipline when and where needed.  *See*

Frederic L. Borch, Judge Advocates in Combat: Army Lawyers in Military Operations from

Vietnam to Haiti 190 (2001) (explaining that a court-martial convened in the Persian Gulf the

night before Operation Desert Storm began in 1991 "demonstrated to every division soldier that

the maintenance of discipline was an integral part of preparing for the upcoming attack").  As

might be expected in such a system, there are no standing trial courts.  Military judges instead

are assigned to cases (and not the other way around), and as military officers, court-martial

judges "'may perform judicial duties only when assigned.'"  *Joshua*, 607 F.3d at 383 (quoting

*Weiss*, 510 U.S. at 168); *see United States v. Ryan,* 5 M.J. 97, 101 (C.M.A. 1978) (internal

quotes omitted) (Courts-martial are the "creature of an order promulgated by an authorized

commander which convenes, or creates, the court-martial entity.  Without such an order, there is no court.").[1]

Owing to the construct of courts-martial, they do not have clerks' offices with responsibility to maintain electronic judicial dockets for the filing and retrieval of court records as they are generated in the course of a court-martial proceeding.  In a court-martial, it is the responsibility of the trial counsel (the prosecuting attorney), under the direction of the presiding judge, to prepare the record of trial.  *See* 10 U.S.C. § 838(a) ("The trial counsel of a general or special court-martial shall . . . under direction of the court, prepare the record of the proceedings.").  Custody of exhibits during the court-martial is then the shared responsibility of the court reporter (who is appointed by the convening authority),[2] trial counsel,[3] and the military judge.[4]

---

[1]  Appeals also reflect the special circumstances confronting only the military.  While the military's several courts of criminal appeals are composed of servicemembers, the U.S. Court of Appeals for the Armed Forces (CAAF)—the highest court in the military system—"consists of civilian judges free from military influence."  *Lawrence v. McCarthy*, 344 F.3d 467, 473 (5th Cir. 2003).  Congress "deliberately chose" this scheme "so that disinterested civilian judges could gain over time a fully developed understanding of the distinctive problems and legal traditions of the Armed Forces."  *Noyd v. Bond*, 395 U.S. 683, 694 (1969).  From this specialized court, there is no general right to seek review from the Supreme Court; rather, those CAAF decisions that "may be reviewed" by the Supreme Court are defined narrowly by statute.  28 U.S.C. § 1259; *see United States v. Denedo*, 556 U.S. 904, 909-10 (2009).  This aspect of the military justice system, too, reflects a considered congressional judgment.  *See Williams*, 787 F.2d at 560 n.11 ("Congress did not intend thereby to reduce the independence of the military courts.").

[2]  Article 28, UCMJ, 10 U.S.C. § 828; *United States v. Dionne*, 6 M.J. 791 (A.C.M.R. 1978); *see also* R.C.M. 502(d)(5), Discussion ("Trial counsel should: ensure that a suitable room, *a reporter* (if authorized) and necessary equipment and supplies are provided for the court-martial.") (emphasis added); AR 27-10, Military Justice, 3 October 2011, ¶ 5-11a ("Reporters will be detailed to all [special courts-martial] and [general courts-martial].").

[3]  *See* R.C.M. 808, Discussion ("Trial counsel should also ensure that all exhibits and other related documents relating to the case are properly maintained for later inclusion in the record."); U.S. Army Trial Judiciary, Rules of Practice Before Army Courts-Martial, Rule 28.1 ("The

Despite all the differences, the "courts of the military justice system are just as obligated to protect [the individual's] constitutional rights as state and federal courts." *Hennis v. Hemlick*, 666 F.3d 270, 278 (4th Cir. 2012) (quotation marks and citations omitted); *see also, e.g.*, *United States v. Denedo*, 556 U.S. 904, 917 (2009) (noting that military courts "must take all appropriate means . . . to ensure the neutrality and integrity of their judgments"). Like state courts, military courts "are not subordinate to the federal courts." *Williams*, 787 F.2d at 561; *see also Schlesinger v. Councilman*, 420 U.S. 738, 746 (1975) (noting that Congress has never "conferred on any Art. III court jurisdiction directly to review court-martial determinations"). With Article 76 of the Uniform Code of Military Justice, Congress has "codifie[d] the common-law rule that respects the finality of judgments." *Denedo*, 556 U.S. at 915-16; *see* 10 U.S.C. § 876 ("Orders publishing the proceedings of courts-martial and all action taken pursuant to those proceedings are binding upon all departments, courts, agencies, and officers of the United States . . . ."). Thus, all decisions of courts-martial, including decisions made during their pendency and preceding final judgment, are to be given preclusive and "binding effect" by civilian courts. *Councilman*, 420 U.S. at 749.

## ARGUMENT

I.  **THE COURT SHOULD NOT EXERCISE JURISDICTION OVER PLAINTIFFS' CLAIMS PURSUANT TO PRINCIPLES OF CONSTITUTIONAL AND PRUDENTIAL MOOTNESS, AND DUE TO THE DEFERENCE OWED TO A COORDINATE MILITARY COURT**

In consideration of the Army's actions to make the Manning court-martial records publicly available, both retroactively and prospectively, and the Army's other actions as

---

assigned court reporter will maintain all original documents until the record of trial is assembled.").

[4] U.S. Army Trial Judiciary, Rules of Practice Before Army Courts-Martial, Rule 28.1 (Exhibits may not be altered, amended, or removed without the permission of the military judge).

described below, there exist compelling grounds for the Court to deny plaintiffs' request for the

extraordinary relief they seek pursuant to principles of constitutional and prudential mootness,

and due to the deference that is owed to the functioning of military courts.

### A.     Constitutional Mootness

"Mootness principles derive from the requirement in Article III of the Constitution that

federal courts may adjudicate only disputes involving 'a case or controversy.'" *Williams v.*

*Ozmint*, --- F.3d ---, No. 11-6940, 2013 WL 1987231, *6 (4th Cir. May 15, 2013) (quoting

*Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 370 (4th Cir. 2012)).  "The case-or-

controversy requirement applies to all stages of a federal case." *Id.* "'[I]t is not enough that a

dispute was very much alive when [the] suit was filed,' but the parties must continue to have a

'particularized, concrete stake' in the outcome of the case through all stages of litigation." *Id.*

"This constitutional requirement is of paramount importance, because the federal courts have 'no

authority to give opinions upon moot questions or abstract propositions, or to declare principles

or rules of law which cannot affect the matter in issue in the case before it.'" *Id.* (quoting

*Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)).

As of June 5, 2013, the Army had made the substantial majority of the Manning court-

martial documents available to the public on its website.  *See* Van Eck Decl. ¶ 14.  The

redactions made to those documents are limited, including redactions for classified information,

proffered testimony, courtroom security details, and certain personally identifying information to

which the public is clearly not entitled.  *See id.*  And Judge Lind has permitted a private

stenographer access to the proceedings.  *See id.* ¶ 18.  Accordingly, as the Army has made such

documents available to the public, there is not now a continuing case or controversy with respect

to these documents.  *See, e.g., In re Time Inc.*, 182 F.3d 270, 272 (4th Cir. 1999) ("[T]he need

for review of sealed documents is moot to the extent they have been disclosed during trial."). Any decision by this Court as to whether in fact any of these records are subject to the First Amendment's requirement of public access would therefore be purely advisory, particularly in light of the fact that the Court's decision would be limited to the specific documents in question.[5]

It is true that in the Article III context, certain sealing decisions have been recognized to fall within the "capable of repetition, yet evading review" exception to mootness in cases where such decisions expire with the completion of a criminal trial. *See Globe Newspaper Co. v. Superior Court for the Cnty. of Norfolk*, 457 U.S. 596, 603 (1982). That approach is supported by the fact that "criminal trials are typically of short duration," and a plaintiff to the case could be expected to be subject to the same order in the future. *See id.* (quotation omitted) (noting that statute mandating closed proceedings would likely be applied again to major newspaper publisher).

In the present case, however, the Army has devised procedures for this case that, moving forward, will continue to provide public access to documents to be filed in the underlying court-martial, including judicial orders and filings of the parties. *See Van Eck Decl.* ¶ 15. These records will be made available to the public as soon as possible, with the goal of posting the records within one to two business days, thereby allowing the Army the ability to redact classified information and possibly other sensitive information. *See id.* The Army's procedures are devised to ensure that the court-martial records will be made publicly available with minimum redactions, only as necessary to protect important, overriding interests. *See id.* In

---

[5] Defendants' mootness arguments extend, of course, only to those documents that the military has made (or has agreed to make) public, including filings of the parties and orders of the Court. There would therefore still be a live controversy with respect to plaintiffs' claims concerning R.C.M. 802 conferences and, potentially, for transcripts of pre-trial proceedings. Those claims, however, lack merit, as discussed in more detail below. *See infra* at 27-34.

light of these procedures, it would be purely speculative for plaintiffs to assume that the public would be wrongly denied access to those documents that are made part of the Manning court-martial going forward, which might then arguably (but only arguably, *see infra* at 29-30) give rise to a constitutional challenge to such action.  Such speculation cannot satisfy the stringent burden that is required for a plaintiff to satisfy the mootness exception.  *See Bahnmiller v. Derwinski*, 923 F.2d 1085, 1089 (4th Cir. 1991) ("Withdrawal or alteration of administrative policies can moot an attack on those policies."); *Phillips v. McLaughlin*, 854 F.2d 673, 677 (4th Cir. 1988) ("A request for prospective relief alone, founded on a challenge to a regulation which no longer applies to plaintiffs, does not present an actual case or controversy.").

## B.     Prudential Mootness

Ultimately, however, this Court need not decide the issue of constitutional mootness and the ambit of the corresponding exemptions, as the doctrine of prudential mootness weighs strongly in favor of dismissal of plaintiffs' claims concerning documents that have been or will be released by the Army.  "The discretionary power to withhold injunctive and declaratory relief for prudential reasons, even in a case not constitutionally moot, is well established."  *S-1 & S-2 v. Spangler*, 832 F.2d 294, 297 (4th Cir. 1987) (citing, *inter alia, United States v. W.T. Grant*, 345 U.S. 629 (1953)).  The prudential concerns that motivate the exercise of such discretion are three-fold: "(1) the court's inability to give an effective remedy because of developed circumstances; (2) the sensitivity and/or difficulty of the dispositive issue; and (3) the likelihood that the challenged act would recur and evade review."  *Smyth v. Carter*, 88 F. Supp. 2d 567, 571 (W.D. Va. 2000).  Each factor supports a finding of prudential mootness in the present case.

First, the Army's decision to make public documents from the Manning court-martial, both retroactively and prospectively, suggests that "as a practical matter," plaintiffs' alleged

harm from its inability to obtain access to such records "has been outrun by supervening events." *United States v. Under Seal*, 757 F.2d 600, 603 (4th Cir. 1985); *see also S-1 & S-2*, 832 F.2d at 297 ("[W]e think the specific relief sought here no longer has sufficient utility to justify decision in this case on the merits.").  This Court should not and need not exercise its jurisdiction in this action because the public now has available to it the bulk of the documents sought by plaintiffs in their request for declaratory and injunctive relief, with the exception of information to which the public does not have a right of access.  With respect to these materials, therefore, an order of the Court requiring the military judge to take specified action would have little additional practical benefit.  *See Under Seal*, 757 F.2d at 603 ("Arguably, it is true, the order could be construed to have some further collateral effects that are still alive, but any such effects are purely derivative of the primary effect and are of minimal significance in relation to that effect.").  Any such marginal benefit would be insufficient to justify the relief sought by plaintiffs in their Complaint with respect to the records made (or to be made) public.  *See S-1 & S-2*, 832 F.2d at 297.

Second, "the difficulty and sensitivity of the constitutional issue at the core of this controversy" supports dismissal of the lawsuit.  *Id.* at 298.  Because the Army has devised a means by which plaintiffs may obtain expeditious access to the records to be filed in the Manning court-martial going forward, this Court should hesitate to decide fundamental constitutional questions of first impression that would certainly affect this court-martial, and could potentially have wide-ranging implications for courts-martial generally.  *See Under Seal*, 757 F.2d at 604.

Plaintiffs are wrong to suggest that the public has a categorical right of access under the First Amendment and common law to all records filed in Article III criminal proceedings, and

thus by extension to courts-martial.  As discussed in greater detail below, the mere filing of a document in a United States district court does not render the record "judicial" and therefore subject to possible First Amendment or common law rights of access.  *See State of W. Va. v. Moore*, 902 F. Supp. 715, 717 (S.D. W. Va. 1995) (citing *In re Policy Mgmt. Sys. Corp.*, 67 F.3d 296, 1995 WL 541623, *4 (4th Cir. Sept. 13, 1995) (unpublished)).  And even if a record qualifies as "judicial," there are then additional questions about "whether the press has a right of access secured by either the first amendment or the common law."  *In re Balt. Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989).  "The distinction between the rights afforded by the first amendment and those afforded by the common law is significant," *id.*, and the Fourth Circuit has accordingly commanded the presiding trial court to make its determination on a document-by-document basis in the first instance.  *See Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 181 (4th Cir. 1988).  The sensitivity and difficulty of these issues is further heightened by the dearth of precedent to guide this Court regarding how these principles apply to courts-martial, which although similar to Article III courts in many respects are different in others in ways possibly bearing upon the public's right of access to court-martial records.

The exercise of discretion in this case is further supported by the Fourth Circuit's admonition to avoid, if possible, "interfere[nce] by injunction" with the internal processes of another organ of government.  *S-1 & S-2*, 832 F.2d at 298; *see also Smyth*, 88 F. Supp. 2d at 571. In the present case, such interference would effectively constitute a collateral federal court's management of another court's docket during the pendency of a demanding court-martial proceeding, which is in direct conflict with other competing interests.  As the Supreme Court has made clear, "[e]very court has supervisory power over its own records and files . . ." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978).  Any such interference in this case

16

additionally contravenes the deference due to the military justice system by this Court, as discussed in further detail below, which would not be justified by the speculative additional benefit that might be gained from a judgment with respect to the nature of the right that attaches to documents already provided to the public.

Third, there is little likelihood that plaintiffs would again be denied access to the documents that the Army has decided to make public.  In order for such injury to occur, the Army would have to reverse course and decide that the policy was in error.  The Fourth Circuit, however, has recognized that the presumption is precisely the opposite, as courts presume that government officials will act in good faith in compliance with stated policy.  *See S-1 & S-2*, 832 F.2d at 298 ("We assume . . . that the State Board and its Chairman will comply in good faith with the OSERS Letter Ruling."); *Under Seal*, 757 F.2d at 604 ("We must therefore assume that the conduct will not be intentionally repeated, and indeed that greater caution will be exercised to avoid inadvertent repetitions in the future."); *see also Bethlehem Steel Corp. v. EPA*, 782 F.2d 645, 650 (7th Cir. 1986) ("[W]e can be reasonably confident . . . that the EPA will not change its mind . . . or be forced to do so by a reviewing court . . . .").

In order to further the public's access to the Manning court-martial, the Army has already released the vast majority of pre-trial documents to the public, which are now available on the Army's website with limited redactions.  It is pure speculation to assume that the Army would alter that course in the time that remains for the Manning court-martial.

### C.      The Deference Owed to the Military Courts Strongly Counsels This Court Not to Exercise Equitable Jurisdiction Over Plaintiffs' Claims

As a threshold matter, before considering the deference a federal court generally owes a coordinate military court, this Court should be aware that a substantial question exists regarding whether it has any ability at all to intervene in the Manning court-martial under present

circumstances.  Plaintiffs have cited no case—and the government is aware of none—in which a federal court has exercised jurisdiction to vindicate the constitutional rights of someone other than the defendant in a court-martial, let alone a case in which that entity's rights are being protected in large part (if not in full).  It is therefore altogether unclear what the jurisdictional basis would be for a federal district court to intervene, at plaintiffs' request, into a military court-martial for the purpose of restructuring military procedures.

In *Schlesinger v. Councilman*, the Supreme Court undertook an exhaustive review of the genesis of collateral attacks on courts-martial.  *See* 420 U.S. 738, 747-53 (1975).  The Court noted the "uniform approach" courts historically took "to the problem of collateral relief from the consequences of court-martial judgments," *id.* at 748, and its discussion makes plain that the tradition permitting collateral relief reflects a desire to insulate *servicemembers* from the potentially "serious consequence[s]" of court-martial proceedings, *id.* at 752; *see also id.* at 751 (rejecting position that would "prevent servicemen from obtaining injunctions" and "preclude any collateral relief . . . unless the serviceman could satisfy" certain requirements).  The Court, listing some of these consequences, noted "unjustifiable deprivations of liberty . . . , deprivation of pay and earned promotion, and even in discharge or dismissal from the service," *id.* at 752, that is, only harms that might befall a defendant.  Notably absent from the Court's discussion is any indication that a collateral attack on a court-martial has ever been recognized as an appropriate vehicle to aid those who would report on a court-martial.  *Cf. Chappell v. Wallace*, 462 U.S. 296 (1983) (refusing to extend *Bivens* to permit actions by service-members against superiors for alleged constitutional violations); *Feres v. United States*, 340 U.S. 135 (1950) (refusing to interpret the Federal Tort Claims Act to permit service-members to bring claims for injuries arising out of military service).  Thus, this Court should hesitate before becoming the

18

first to assume jurisdiction for the purpose of conducting a collateral review of the procedures of a military court in this context.

However, even assuming that this Court could so intervene, it should decline to exercise its equitable jurisdiction in this case.  Because plaintiffs ask this Court to intrude into the military justice system, "[t]here remains the question of equitable jurisdiction, a question concerned not with whether the claim falls within the limited jurisdiction conferred on the federal courts, but with whether consistently with the principles governing equitable relief the court may exercise its equitable powers."  *Councilman*, 420 U.S. at 754.  Like state courts, military courts "are not subordinate to the federal courts."  *Williams v. Sec'y of Navy*, 787 F.2d 552, 561 (Fed. Cir. 1986); *see Councilman*, 420 U.S. at 746 (Congress has never "conferred on any Art. III court jurisdiction directly to review court-martial determinations.").  Instructive here, the Supreme Court has largely "preclude[d] equitable intervention into pending state criminal proceedings" on account of "considerations of comity, the necessity of respect for coordinate judicial systems," and has made clear that the same "considerations apply in equal measure to the balance governing the propriety of equitable intervention in pending court-martial proceedings."  *Id.* at 756-57.  Indeed, "civil courts are 'ill equipped' to establish policies regarding matters of military concern," *Solorio v. United States*, 483 U.S. 435, 448 (1987); *see also Berry v. Bean*, 796 F.2d 713, 716 (4th Cir. 1986) ("[I]t is difficult to conceive of an area of governmental activity in which the courts have less competence." (quotation marks and citation omitted)), and judges simply "are not given the task of running" the military, *Chappell*, 462 U.S. at 301 (quotation marks and citations omitted).

Pursuant to these principles, federal courts considering military judgments must proceed with "great deference," *Berry*, 796 F.2d at 716.  Under *Councilman*, a federal court can upset a

determination of a court-martial only on a "valid showing of 'extraordinary circumstances' that would warrant federal intervention." *Lawrence v. McCarthy*, 344 F.3d 467, 470 (5th Cir. 2003) (quoting *Younger v. Harris*, 401 U.S. 37, 45, 53-54 (1971)).  Mere error does not justify such action; a federal court can undo the work of a court-martial only if its "judgment is void," that is, "because of lack of jurisdiction or some other equally fundamental defect." *Councilman*, 420 U.S. at 746-47; *cf. Denedo*, 556 U.S. at 916 ("[T]he extraordinary remedy of *coram nobis* issues only in extreme cases . . . when it is shown that there were fundamental flaws in the proceedings.").[6]

Plaintiffs cannot demonstrate extraordinary circumstances to warrant this Court's collateral intervention into a coordinate military court.  *See Hennis*, 666 F.3d at 278 (federal courts reviewing courts-martial can only "review issues of jurisdiction, allegations of substantial constitutional violations, and claims that exceptional circumstances resulted in a fundamental miscarriage of justice").  Plaintiffs now have access to the vast majority of records they previously sought when they attempted to intervene in the Manning court-martial, and their prior grievance with that court does not gives rise to "extraordinary circumstances" that might warrant this Court's exercise of its equitable authority.  Deference is also owed to the system put in place by the Army to ensure that the public will have prompt access to documents as they are filed in the Manning court-martial going forward.  The Secretary is fully cognizant of the public's interest in the Manning court-martial and has put in place a process to satisfy whatever right of public access might arguably attach to the records of that proceeding.  There exist no extraordinary grounds on which to upset this system.  *Cf. City of Littleton, Colo. v. Z.J. Gifts D-*

---

[6] While the "holding of *Councilman* suggest[s] that abstention is a mandatory doctrine subject to exceptions," the Fourth Circuit has not yet decided "whether *Councilman* abstention is a mandatory doctrine subject to exceptions or a discretionary doctrine." *Hennis v. Hemlick*, 666 F.3d 270, 275 (4th Cir. 2012).

*4, LLC*, 541 U.S. 774, 781-82 (2004) ("Colorado's ordinary judicial review procedures suffice as long as the courts remain sensitive to the need to prevent First Amendment harms and administer those procedures accordingly.").

To be sure, although similar in many respects to Article III courts, courts-martial are different in others, with procedures perhaps unfamiliar to federal practitioners and judges.  Thus, as noted earlier, because courts-martial are incidental to the military's primary fighting function, they are designed to be convened quickly, at times in far-away places.  *See supra* at 9-10. Standing military trial courts do not exist, and in contrast to United States district courts, courts-martial do not have clerk's offices with responsibility to maintain electronic judicial dockets for the filing and retrieval of court records as they are generated in the course of an ongoing civil or criminal proceeding.  In a court-martial, in contrast, it is the responsibility of the trial counsel (the prosecuting attorney), under the direction of the court, to prepare the record of trial.  *See* 10 U.S.C. § 838(a) ("The trial counsel of a general or special court-martial shall . . . under direction of the court, prepare the record of the proceedings.").  Custody of exhibits during the court-martial is then the shared responsibility of the court reporter (who is appointed by the convening authority), trial counsel, and the military judge.

Owing to the construct of this system, trial counsel, defense counsel, and the court file records in an ongoing court-martial without first redacting sensitive information such as classified information or personally identifying information (e.g. social security numbers).  The Army must accordingly be allowed reasonable time to review court-martial records for redaction before it can permit public access to such records.  Pursuant to the procedures implemented in the Manning court-martial, the Army will conduct this process expeditiously, with the goal of producing the documents to the public within one to two business days, which is eminently

reasonable.  And Judge Lind has also permitted a private stenographer access to the proceedings moving forward.  Respect and deference is owed to these procedures and to the mechanisms by which courts-martials are operated.  *Councilman*, 420 U.S. at 746-47.  It is, with respect, not for this Court at the urging of plaintiffs to impose its own mechanisms on the military system of justice.  *Id.; see also Williams v. Wilson*, 762 F.2d 357, 359 (4th Cir. 1985) ("[T]raditional judicial trepidation over interfering with the military establishment has been strongly manifested in an unwillingness to second-guess judgments requiring military expertise and in a reluctance to substitute court orders for discretionary military decisions.") (quotation marks and citation omitted).

Federal courts have declined to intervene in courts-martial when faced with constitutional concerns much greater than plaintiffs'.  In *Councilman*, for example, the Supreme Court held that "the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution" presented no occasion for a federal court to intervene in a court-martial.  420 U.S. at 754-55.  Recently the Fourth Circuit likewise declined to intervene, concluding that even a death sentence did not "implicate[] an extraordinary circumstance mandating federal court intervention."  *Hennis*, 666 F.3d at 280; *see also Lawrence*, 344 F.3d at 472 ("[C]laims that he suffers economically when called to active duty, and is forced to submit to limitations upon his liberty . . . , do not satisfy the standard set forth by the Supreme Court." (footnote omitted)).  Any injuries or inconvenience that plaintiffs might complain of arising from the Army's practices or procedures, or that might hypothetically arise in the future, clearly do not even rise to the level of injuries courts have found not to justify collateral intervention into a court-martial

proceeding. All of these reasons counsel strongly in favor of this Court abstaining from the exercise its equitable jurisdiction.[7]

## II. PLAINTIFFS CANNOT SATISFY THE REQUIREMENTS FOR THE ISSUANCE OF PRELIMINARY INJUNCTIVE OR DECLARATORY RELIEF

Even were the Court to exercise jurisdiction in this case, plaintiffs cannot satisfy the exacting requirements for the issuance of the extraordinary relief they seek. "'[P]reliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances.'" *MicroStrategy Inc. v. Motorola, Inc.* 245 F.3d 335, 339 (4th Cir. 2001) (internal quotation marks omitted). "The limited circumstances amount to the demonstration of a need to protect the status quo and to prevent irreparable harm during the pendency of the litigation to preserve the court's ability in the end to render a meaningful judgment on the merits." *In re Microsoft Corp. Antitrust Litigation*, 333 F.3d 517, 526 (4th Cir. 2003), *abrogated on other grounds by eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006).

In this case, however, plaintiffs do not ask the Court to protect the status quo pending the litigation of their claims. Rather, plaintiffs ask the Court to issue *mandatory*, final relief

---

[7] The cases plaintiffs cite lend no support to their position. *See* Pls.' Mem. at 19, 37. In *Globe Newspaper Co. v. Pokaski*, the court ruled that the application of a state statute by a clerk's office to deny access to judicial records violated the First Amendment. 868 F.2d 497 (1st Cir. 1989). The case did not involve any order directed to a state judge, and raised none of the comity concerns that are implicated when a federal court might intervene in the pending proceedings of a coordinate court. *See also United States v. Wecht*, 537 F.3d 222, 224 (3d Cir. 2008) (reversing order of subordinate court); *Courthouse News Svc. v. Jackson*, 38 Media L. Rep. 1894, 2010 U.S. Dist. LEXIS 74571, at *1 (S.D. Tex. Feb. 26, 2010) (entering injunction to state court's clerk's office "on the joint motion of the parties"). In *Detroit Free Press v. Ashcroft*, the court held that blanket closure orders in deportation proceedings violated the First Amendment. 303 F.3d 681 (6th Cir. 2002). The court there explained that the government was "not entitled to special deference in this area," *id.* at 688, making the case irrelevant to the present context, where "courts accord decisions of military authorities *great deference*," *Berry*, 796 F.2d at 716 (emphasis added).

imposing obligations on a coordinate court during the pendency of an ongoing court-martial, including relief dictating the manner by which the military court will control its docket and the manner by which the military court shall henceforth conduct off-the-record conferences with defense and prosecution counsel.

The Fourth Circuit has made clear that "[m]andatory preliminary injunctive relief in any circumstance is disfavored, and warranted only in the most extraordinary circumstances." *Taylor v. Freeman*, 34 F.3d 266, 270 n.2 (4th Cir. 1994). Accordingly, mandatory preliminary injunctions "should not be issued unless the facts and the law clearly favor the moving party.'" *Id.*; *see also Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013) ("[W]hen the preliminary injunction is 'mandatory rather than prohibitory in nature,' this Court's 'application of th[e] exacting standard of [appellate] review is even more searching.'").

Subject to these exacting standards, the issuance of a preliminary injunction is guided by the familiar four-part test, pursuant to which plaintiffs must demonstrate (1) they are likely to suffer irreparable harm, (2) the balance of hardships tips in their favor, (3) they are likely to succeed on the merits, and (4) the injunction is in the public interest. *See Pashby*, 709 F.3d at 320. When applying this test, each preliminary injunction factor must be "satisfied as articulated." *Id.* Thus, "courts considering whether to impose preliminary injunctions must separately consider each . . . factor." *Id.* at 321. In this case, for the reasons that follow, plaintiffs cannot sustain their burden of showing that any of these factors supports granting the extraordinary relief they request.

### A.    Plaintiffs Cannot Demonstrate Irreparable Harm

Plaintiffs cannot demonstrate irreparable harm, which by itself requires the denial of the extraordinary relief they seek. This conclusion is compelling in light of the Army's actions to

make publicly available Manning court-martial records, both retroactively and prospectively. Plaintiffs have always had and will continue to have access to the public court-martial proceedings themselves, whereby they are able to observe the Manning trial first-hand.  However much plaintiffs presumably might complain in their reply memorandum (to be filed on June 10, 2013) about the Army's procedures going forward, they cannot demonstrate pursuant to the authorities on which they rely that they will suffer *irreparable* injury as a result of any alleged deficiencies.  Given the additional actions the Army has taken in making records available to the public, plaintiffs cannot demonstrate that the public will be denied meaningful opportunity to observe the Manning court-martial consistent with common law and First Amendment principles.[8]

These same conclusions apply *a fortiori* to plaintiffs' separate claim for relief relating to the military judge's conduct of off-the-record conferences with counsel.  These conferences are of the nature of the off-the-record conferences routinely conducted by United States district courts (such as has already occurred in this very case when this Court in conference with counsel established a briefing/hearing schedule governing the instant motion), and are expressly permitted in military courts-martial to "consider such matters as will promote a fair and expeditious trial."  R.C.M. 802(a).

---

[8] Plaintiffs proclaim that the loss of First Amendment rights constitutes *per se* irreparable injury. Pls.' Mem. at 19.  Although the Fourth Circuit has noted that the *demonstrated* loss of First Amendment freedoms, for even minimal periods of time, constitutes irreparable injury, *Legend Night Club v. Miller*, 637 F.3d 291, 302 (4th Cir. 2011) (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality op.)), the court has also closely scrutinized allegations of irreparable harm flowing from alleged temporary denials of First Amendment rights, *see Steakhouse, Inc. v. City of Raleigh*, 166 F.3d 634, 637 (4th Cir. 1999) (stating that plaintiff's "cries of irreparable injury" had "a tinny pitch").  In this case, because the public has meaningful opportunity to observe the Manning court-martial, any alleged First Amendment harms going forward are marginal at best and are hardly compelling.

Plaintiffs argue that "the trial court has decided substantive matters without promptly memorializing the discussion or the decisions on the record," purportedly in violation of the First Amendment.  *See* Pls.' Mem. at 30.  This accusation is not supported by the record and does not in any event substantiate irreparable injury.  As is true with any court, it must be presumed that a military court-martial will do that which is "'required by the fundamental law of the land,'" *Hennis*, 666 F.3d at 277 (quoting *Councilman*, 420 U.S. at 756), and plaintiffs cannot demonstrate irreparable injury based on mere speculation that this will not occur in the Manning court-martial going forward.  Indeed, it is at the very least questionable whether plaintiffs can even demonstrate sufficient injury-in-fact in support of Article III standing to challenge the military judge's use of R.C.M. 802 in the Manning court-martial based on nothing more than their accusation that she had transgressed R.C.M. 802 in the past.[9]

Lastly, plaintiffs cannot demonstrate that they suffer irreparable injury for not having available to them trial transcripts of the Manning court-martial.  Following the filing of this lawsuit, Judge Lind permitted private stenographers to memorialize the proceedings.  *See* Van Eck Decl. ¶ 18.  Accordingly, plaintiffs will suffer no injury moving forward.

### B.     The Balance of the Hardships Favors Denial of Plaintiffs' Requested Relief

There is no question that defendants would be significantly harmed by issuance of the sweeping and unprecedented relief sought by plaintiffs.  Plaintiffs ask this Court to collaterally intervene into a military court to impose various mandates on the military judge during on-going

---

[9] Plaintiffs, in addition, cite cases in which the military appellate courts have found abuses of R.C.M. 802 by trial courts, *see* Pls.' Mem. at 33, from which they argue that "the military courts have long suffered from a widespread practice of using 802 conferences to argue and pre-decide troublesome issues outside of public view."  *Id.*  This argument is particularly meritless as any lawyer can gather appellate court decisions finding that lower courts in the cases before them have transgressed Rules of Civil Procedure.  To suggest that such "evidence" thereby demonstrates irreparable injury that might justify this Court's issuance of extraordinary relief of the nature sought by plaintiffs is itself a remarkable proposition that has no basis in law or fact.

court-martial proceedings.  Such intrusions would be substantial and disruptive, and contrary to the principle that "[e]very court has supervisory power over its own records and files . . ." *Warner Commc'ns*, 435 U.S. at 598; *see also In re Time Inc.*, 182 F.3d 270, 272 (4th Cir. 1999) ("[W]e do not intend for this order to disrupt the trial.  We are confident that the district court will attend to our directions as expeditiously as it can, giving all necessary attention to the conduct of the trial.").  All the more worrying about the potential imposition of such relief is the fact that plaintiffs ask that it be issued on the run, when this Court is given only limited opportunity to review the difficult issues presented in this case within the very compressed schedule allowed for the review of a preliminary injunction motion.  The significant disruption and possible damage that might result from the issuance of such drive-by relief should not be discounted, especially when plaintiffs ask that this Court to intervene in a coordinate military court during an ongoing court-martial, the conduct of which will demand that court's full attention.

## C.      Plaintiffs Cannot Demonstrate A Likelihood Of Success On The Merits

Plaintiffs seek wide-ranging access to records relating to the Manning court-martial, including court orders, defense and prosecution filings, transcripts of open-court proceedings, and public access to R.C.M. 802 conferences.  Also, the preliminary injunction that plaintiffs seek would effectively end this case, as it would grant the very relief that plaintiffs seek in their Complaint.  *See* Pls.' Proposed Order.  As shown by an analysis of each of the general categories of records that plaintiffs seek, they can establish no entitlement to such extraordinary relief.

1. <u>Court Orders and Filings by the Parties</u>

Because the Army has acted to make the vast majority of the Manning court-martial records publicly available, both retroactively and prospectively, plaintiffs' contention that "the military trial court has effectuated a blanket closure order over the proceedings in the *Manning* case" is without merit.  Pls.' Mem. at 26.  As of June 5, plaintiffs and the public were given access to the vast majority of records that were made part of the Manning court-martial in pre-trial proceedings, thereby satisfying whatever rights of access the public might arguably have to those records.  Going forward, any alleged public right of access to trial records as they come into existence in the Manning court-martial will also be satisfied pursuant to the mechanism put in place by the Army to make such records available, subject to limited redactions of only certain information, such as classified information, to which the public has no entitlement.[10]  *E.g. Press-Enter. Co. v. Superior Court of Cal.*, 464 U.S. 501, 510 (1984) (the First Amendment provides a *qualified* right of access to judicial records which is subject to other overriding interests in favor of withholding certain information from public view).

---

[10] Any suggestion by plaintiffs that this minimal delay would violate their First Amendment rights is without merit.  As noted earlier, due to the organization and construct of courts-martial and by operation of their rules governing the control of records, the court itself and counsel file records in on-going proceedings without first redacting sensitive information, such as classified information or social security numbers.  Going forward, in order to ensure that such information as might be contained within documents to be made part of the Manning court-martial are not publicly released, thereby jeopardizing national security interests or personal security, the Army must be allowed a reasonable time within which to review records for this purpose.  *See* Pls.' Mem. at 24 (suggesting that "[r]edaction of sensitive information" may be a reasonable alternative to permit public access while protecting sensitive material); *see also United States v. Dimora*, 862 F. Supp. 2d 697, 708 (N.D. Ohio 2012) ("While certain information contained within these files may be accessible through a public documents request, the files may also contain sensitive personal information (such as bank account numbers, dates of birth, and home addresses) that is not otherwise available for public inspection, and was not germane to the proceedings in this case. Thus, the Court will only permit the release of these documents, subject to the government's redaction of all such personal information in accordance with Rule 49.1(a).").

Plaintiffs are left with the argument that, going forward, the Army might possibly withhold particular records in alleged violation of constitutional or common law rights of access. In addition to the fact that any such claim is purely speculative and therefore not a basis for relief, plaintiffs cannot, in contemplation that such an event might occur, obtain an order from this Court to the effect "that any restrictions on public access be allowed only after a case-by-case specific showing that a compelling government interest justifies the restrictions and no less-restrictive alternatives are available." Pls.' Mem. at 42. Plaintiffs disregard the fact that "[t]he right of access in any given case may vary depending on the nature of the case and the specific item under review." *Va. Dep't of State Police v. Washington Post*, 386 F.3d 567, 576 (4th Cir. 2004).

As noted earlier, the mere filing of a document in court does not render the record "judicial" and therefore subject to possible First Amendment or common law rights of access. *See State of W. Va. v. Moore*, 902 F. Supp. 715, 717 (S.D. W. Va. 1995). Any future withholding of a record in the Manning court-martial might accordingly not give rise to *any* rights at all. Even if a record does qualify as "judicial," there are then additional questions about "whether the press has a right of access secured by either the first amendment or the common law," *In re Balt. Sun Co.*, 886 F.2d at 64, which is significant because "'the common law does not provide as much access to the press and public as does the First Amendment.'" *Va. Dep't of State Police*, 386 F.3d at 575. In contrast to First Amendment standards, the Supreme Court has made clear that, under the common law, "the decision as to access [to a court record] is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant

facts and circumstances of the particular case."[11]  *Warner Commc'ns*, 435 U.S. at 599; *see also*

*In re Balt. Sun Co.*, 886 F.2d at 65.

     Moreover, as the First Amendment protections due a particular document is, in part,

dependent upon "whether the place and process have historically been open to the press and

general public," *In re Application of the United States for an Order Pursuant to 18 U.S.C.*

*§ 2703(d)*, 707 F.3d 283, 291 (4th Cir. 2013), the fact that the records sought are connected to a

military court-martial has relevance to the constitutional analysis.  After all, "it . . . remains true

that military tribunals have not been and probably never can . . . have the same kind of

qualifications that the Constitution has deemed essential to fair trials of civilians in federal

courts."  *United States ex rel. Toth v. Quarles*, 350 U.S. 11, 17 (1955).

     The constitutional distinctions that exist between the civil and military contexts apply

with equal force to the application of the First Amendment.  Indeed, courts have limited the right

of public access in various military contexts, including access to military units in a battlefield,

*see, e.g.*, *Flynt v. Rumsfeld*, 355 F.3d 697, 410 (D.C. Cir. 2004) ("In sum, even if we were to

attempt a *Richmond Newspapers* analysis and consider the historical foundations of a right of

media access to combat units, appellants' claim would fail miserably."), and to limit access to

military bases, *see, e.g.*, *Greer v. Spock*, 424 U.S. 828, 838 (1976) ("The notion that federal

military reservations, like municipal streets and parks, have traditionally served as a place for

free public assembly and communication of thoughts by private citizens is thus historically and

constitutionally false.").  Thus, any First Amendment right of access to particular documents

---

[11] The Court in *Warner Communications* also recognized that the existence of an alternate
statutory scheme provided by Congress for the public to access governmental information—in
that case the Presidential Records Act—tipped the balance in favor of denying release, even
though the Act entails procedural requirements and potential delays in obtaining access.  *See* 435
U.S. at 604-06.

generated in a court-martial, which may be convened on a military base or even in the midst of a battlefield in times of war, would necessarily be colored by these limitations.

Accordingly, whether the public, with respect to any particular document, has a common law right of access, a First Amendment right of access, or no right of access at all, depends on a range of factors which this Court cannot possibly anticipate in advance of a document's creation and possible submission in an on-going court-martial. *Stone*, 855 F.2d at 181 (a district court must make determinations about access rights on a document-by-document basis). The declaratory and injunctive relief sought by plaintiffs would improperly attach to documents (not yet known or identified) various rights of access which cannot be substantiated in the law, thereby requiring the denial of such relief. *Taylor*, 34 F.3d at 270 n.2 (the extraordinary relief of the nature sought by plaintiffs cannot issue "'unless the facts and the law clearly favor the moving party'"). Indeed, due to the nature of the relief plaintiffs seek, it is their burden to demonstrate that their entitlement to such relief is "'indisputably clear,'" which they cannot do. *In Re Microsoft*, 333 F.3d at 525 (quoting *Communist Party of Ind. v. Whitcomb*, 409 U.S. 1235 (1972) (Rehnquist, J., opinion in chambers)).

> 2. Transcripts of Public Proceedings

Plaintiffs also seek access to transcripts or other "audio records" of public proceedings. *See, e.g.*, Pls.' Mem. at 10-11. As an initial matter, plaintiffs' request for transcripts moving forward has been mooted by Judge Lind's decision to permit private stenographers to transcribe proceedings in open court. *See* Van Eck Decl. ¶ 18.

It is unclear whether plaintiffs request retroactive relief relating to transcripts, because plaintiffs' Proposed Order requests an order requiring contemporaneous access to transcripts "or substitutes for transcripts" moving forward, but with respect to already created documents

requests only "individual documents already generated or filed in the court-martial."  Proposed

Order at 2.  Court-martial proceedings are not typically transcribed before the end of the

proceedings.  *See* Van Eck Decl. ¶ 9.  In fact, the R.C.M. requires that a verbatim transcript be

prepared only in certain circumstances depending on the nature of the verdict.  *See* R.C.M. 1103.

Thus, in the Manning court-martial, transcripts have not been created in the regular course, such

that there exists a defined set of "individual documents already generated."  To the extent that

there are transcripts that have been created, there is no reason to believe the public would not be

given access to those documents.  *See* Pls.' Mem. at 10-11 (noting release of prepared transcripts

to the public).

To the extent that plaintiffs request something more, then, it is a request that the Army

either hand over original audio recordings of past proceedings, or that the Army transcribe, at its

own expense, audio recordings of hearings to which the named plaintiffs *have previously had*

*access*.  The First Amendment cannot require such extreme measures, particularly in light of the

fact that audio recordings themselves are not "records" of the court-martial.  *See Fisher v. King*,

232 F.3d 391, 398 (4th Cir. 2000) (citing *United States v. McDougal*, 103 F.3d 651, 657 (8th Cir.

1996) ("By contrast, the videotape at issue in the present case is merely an electronic recording

of witness testimony.  Although the public had a right to hear and observe the testimony at the

time and in the manner it was delivered to the jury in the courtroom, we hold that there was, and

is, no additional common law right to obtain, for purposes of copying, the electronic recording of

that testimony.")).  Audio-recordings are preserved instead for the creation of a transcript that

will eventually become part of the verbatim record, should one be required.  *See* R.C.M. 1103.

The First Amendment does not require that the government create a transcript when one does not

exist.  *See Houchins v. KQED, Inc.*, 438 U.S. 1, 11 (1978) ("There is an undoubted right to

gather news 'from any source by means within the law,' but that affords no basis for the claim

that the First Amendment compels others—private persons or governments—to supply

information.") (internal citation omitted).

       3.     Rule 802 Proceedings

Plaintiffs have no likelihood of success on the merits of the claim for relief relating to

conferences held in the Manning court-martial pursuant to R.C.M. 802, including instructing the

military judge how and when to schedule such a conference. *See, e.g.*, Pls.' Mem. at 11-13, 29-

30. Similar to the practice of many Article III courts, R.C.M. 802 affords military judges or

counsel for either side with a means to "consider such matters as will promote a fair and

expeditious trial." R.C.M. 802(a). Thus, as explained in the "Discussion" section of the rule, its

purpose is not "to litigate or decide contested issues" but, *inter alia*, to "inform the military judge

of anticipated issues and to expeditiously resolve matters on which the parties can agree," and

also to set schedules or resolve scheduling difficulties "so that witnesses and members are not

unnecessarily inconvenienced." *Id.* There is no requirement that R.C.M. 802 conferences that

address routine administrative matters pertaining to the court-martial be made part of the record.

R.C.M. 802(b). However, if substantive matters, as agreed to by the parties, are discussed, those

matters shall be included in the record. *Id.*

Other than condemning the military judge for her purported misuse of R.C.M. 802

conferences, plaintiffs notably do not cite any authority for the proposition that the public has a

First Amendment right of access to off-the-record conferences. The test for determining whether

a First Amendment right of access is available is "1) 'whether the place and process have

historically been open to the press and general public,' and 2) 'whether public access plays a

significant positive role in the functioning of the particular process in question.'" *In re Balt. Sun*

*Co.*, 886 F.2d at 64 (quoting *Press-Enter.*, 478 U.S. at 8-10).  Under the first prong of this test it is obvious that off-the-record conferences between court and counsel, which are routinely held in federal courts as they are in courts-martial, have not "'historically been open to the press and the general public.'"  *Id.*  Equally obvious is the fact that, under the second prong of this test, the public would not play "a significant positive role" in the functioning of such conferences, but rather the reverse.  Indeed, the principal advantage of such conferences is that they are off-the-record and outside the view of the public.  This enables the court with the assistance of counsel to expeditiously address and possibly resolve any number of matters that might arise in any given case or proceeding in a more informal setting.  Public access to such conferences would defeat their very purpose and utility, and plaintiffs do not offer any law or logic which compels that such access occur.

## D.       Issuance of the Relief Plaintiffs Seek Will Not Serve the Public's Interests

Plaintiffs have access to the Manning court-martial.  Thus, the question is not whether the public will be denied access to the proceedings.  Nor is there any longer an issue about whether the public will have access to records of that court-martial, as the Army has provided the substantial majority of pre-trial records and has adopted procedures to make those records public. This case is now instead about whether the public has a right to Rule 802 proceedings, withholdings, and other procedural issues that lie at the margins of public access, at the enormous cost of federal court interference and oversight of military court proceedings.  In light of the Court's reluctance to interfere with court-martial jurisdiction, even in cases where the most fundamental of rights are at stake, *see Hennis*, 666 F.3d at 280; *Lawrence*, 344 F.3d at 472, the denial of plaintiffs' request to rewrite the military court's own procedures will greatly serve the public interest.

## CONCLUSION

For the foregoing reasons, plaintiffs' Motion for Preliminary Injunction should be denied.


Dated: June 6, 2013                    Respectfully submitted,

                                       STUART F. DELERY
                                       Acting Assistant Attorney General

                                       IAN HEATH GERSHENGORN
                                       Deputy Assistant Attorney General

                                       JOSEPH H. HUNT
                                       Director, Federal Programs Branch

                                       _____/s/ John R. Tyler_____
                                       JOHN R. TYLER
                                       (DC Bar No. 297713)
                                       ERIC WOMACK
                                       (IL Bar No. 6279517)
                                       GREGORY DWORKOWITZ
                                       (NY Bar Registration No. 4796041)
                                       U.S. Department of Justice
                                       Civil Division
                                       Federal Programs Branch
                                       Washington, D.C. 20001
                                       Tel: (202) 514-2356
                                       Fax: (202) 616-8470
                                       john.tyler@usdoj.gov

                                       Counsel for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on June 6, 2013, I caused a true and correct copy of the foregoing

Memorandum and attachments to be served on plaintiffs' counsel electronically by means of the

Court's ECF system.

 */s/ John R. Tyler*
JOHN R. TYLER